**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Henry A. ROSENFELD,
Defendant-Appellant.**

**No. 75–1950.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 13, 1976.
Decided Nov. 11, 1976.

Rodney W. Snow, Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Richard J. Weinberg, Evergreen, Colo., for defendant-appellant.

Before LEWIS, Chief Judge, and BREIT-ENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The appellant seeks reversal of his conviction in the United States District Court for the District of Colorado in a criminal case in which the charge was distribution of a schedule II narcotic controlled substance (cocaine), contrary to 21 U.S.C. Section 841(a)(1) and 18 U.S.C. Section 2.

The main issue raised is that of entrapment growing out of solicitations by an agent for the Federal Drug Administration, one Hopkins. The evidence on behalf of appellant (unrebutted by Hopkins) showed

that on or about December 10, 1974, Hopkins contacted the appellant at his home in Fort Lauderdale, Florida. A mutual friend introduced them. During this three hour visit in which Hopkins had sought to arrange a cocaine purchase, Hopkins offered to prove his ability to purchase by driving to Miami in order to show appellant a large sum of money. Defendant, according to his testimony, stated that he was not interested in dealings of this nature. The next time that Hopkins communicated with the appellant was around December 20, 1974, when he called from Colorado. He had called on December 14 before he left Florida saying that he was unable to purchase cocaine from Florida suppliers and asked if the appellant would look into purchasing cocaine for him. Appellant, according to his testimony, said no. He also said that he had no intention of dealing with him.

On December 20, Hopkins called from Telluride, Colorado, saying that he was still interested in purchasing a large amount of cocaine and wanted appellant to consider it. He said that there was $10,000 to $15,000 available for the transaction. Appellant said that he got Hopkins' telephone number because he was anticipating the possibility that he would go to Colorado to ski and would need to know somebody there.

In January 1975, appellant received another call in which the subject of cocaine was brought up again. This was one of a total of half a dozen such calls in January. On each occasion, according to appellant, he flatly refused to cooperate. In the latter part of January there was still another call, and on that occasion appellant introduced Hopkins to a friend by the name of Kevin, who he thought could possibly satisfy the Hopkins request for cocaine. He did this, according to his testimony, because he was tired of having Hopkins call him all the time.

About February 15, Hopkins came to Florida and at that time appellant picked him up at his hotel, brought him to his apartment and introduced him to his friend Kevin. Appellant claimed that he had nothing to do with the conversations but that the two talked. On that occasion he saw Hopkins "snorting" cocaine several times. The following day he saw Hopkins in Miami where he again met with Kevin. They negotiated, but they had differences and were unable to make a transaction. The next occasion when appellant heard from Hopkins was around February 20–25 when he received a telephone call. This was when appellant was in Akron, Ohio. He was there to visit his father, who was sick, having had a heart attack. He then received a call from Hopkins made from Wichita, Kansas. He said he told Hopkins that he was in Akron; that his father was sick; and that he was there to be with his family. At that time, according to appellant, Hopkins said that it would be beneficial if appellant could bring about a cocaine transaction. Appellant explained that Hopkins knew that his finances were low and that his father had no type of hospital insurance and that appellant needed money. On that occasion appellant said that he told Hopkins that he would call him back.

Following Hopkins' telephone call appellant proceeded to call one James Charlton in Akron, Ohio and went over to his house. He told Charlton what Hopkins wanted. Apparently appellant arranged to get a substantial amount of cocaine to take to Colorado and he reported this to Hopkins back in Wichita. He was told that Hopkins was interested in purchasing four pounds of cocaine; that he wanted it immediately; and that he was to fly out with it. After that, appellant flew to Colorado and was met there by Hopkins at the airport. He also met Agent Roth that evening and was shown a bagful of money. Appellant did not mention to Roth and Hopkins the source of the cocaine. Subsequently, Roth and Hopkins arranged for appellant to meet a man named Karras at the Holiday Inn. Karras, together with Roth and Hopkins, was present. Defendant was arrested on this occasion, that is, on March 11 at 9:00 p. m.

On questioning from his counsel, defendant testified that he had been convicted of a felony in December 1968 for possession of

hallucinogenic drugs for which he was placed on probation. He was subsequently discharged. He said that in the complete interval up to the time of the transaction for which he is being prosecuted he has had no dealings in drugs. Appellant estimated that Hopkins had called him some 18 to 20 times to get him to deal in drugs.

The several points which he advances are:

First, that the court erred in denying defendant's motion for judgment of acquittal based on the defense of entrapment; that the existence of this defense was not a disputed fact; that it was a question of law which should have been resolved in his favor.

Second, the failure of the trial court to grant a judgment of acquittal was error. The point made is that the failure of the government to go forward with proof following the offer of the evidence having to do with entrapment itself sufficed to justify the defense.

Third, that the trial court erred in denying the motion to suppress the contraband based upon the fact that a search was made without a warrant, and was unreasonable and in violation of the Fourth Amendment.

Fourth, that the trial court erred in its refusal to grant a mistrial following the court's remarks with respect to the defendant's appeal rights and the court's alleged insinuations in the presence of the jury plus the alleged failure of the court to show respect for appellant's lawyer.

## I.

In the case at bar the evidence does establish that frequent calls were made by Hopkins to the defendant. Appellant does not explain, however, why Hopkins did not become discouraged by the numerous refusals. On the occasion of one of the calls appellant found himself in particular need of money. On this account, according to his own testimony, he decided to go forward with the transaction. He proceeded to obtain the narcotic, to transport it from Ohio to Denver and to deliver it to the government agents. It boils down then to whether or not there is evidence in the record

sufficient to demonstrate beyond a reasonable doubt the willingness of appellant to sell the cocaine. In our view there was ample testimony to disprove the entrapment and to support the verdict. In addition to the fact of procuring the cocaine and delivering it, there is evidence that defendant was no stranger to narcotics having been convicted earlier of a drug offense. Also, he had used cocaine and was using it on the day that he was negotiating with Agent Roth. The jury could very well have found that defendant's participation in this transaction was a matter of volition and that he did so because of his need for money.

We are unable to agree that the persistent calls of Hopkins constituted duress or other factor capable of changing an unlawful transaction into one in which entrapment was the positive factor. Definitely the question was one of fact and was not one of law.

It has been argued by counsel that Hopkins deliberately sought out defendant and played on the troubles which he was then experiencing due to his father's being ill. This fact is not emphasized by the defendant in his testimony and it is not underlined in the brief. Hopkins may well have urged him to participate in the transaction after appellant had told Hopkins that he was in need of money as a result of his father's having had a heart attack. This unfortunate family condition does not serve to cause the defendant's act to be entrapment as a matter of law.

## II.

As to the duty of the government to come forward with countervailing evidence after the defendant testified: first, we are mindful that the government's burden is continuous to prove guilt beyond a reasonable doubt and this includes negativing the defense of entrapment where such evidence has been offered. Second, the burden on the part of the government to offer positive countervailing evidence arises where the entrapment has been established to the point where no question of fact remains. For example, in such a situation the

government would be called upon to present as a witness the agent who was involved in the alleged entrapment to contradict the testimony of the defendant. This state of proof was not present here. There were internal factual disputes within the transaction as it was described by appellant. It was reasonable to infer that appellant was motivated by his own needs including the monetary aspect.

■ Since the evidence is not undisputed that an otherwise innocent person was induced to commit the act complained of, it was not incumbent on the trial court to enter a judgment of acquittal. *See United States v. Gurule,* 522 F.2d 20, 23 (10th Cir. 1975); *Martinez v. United States,* 373 F.2d 810, 812 (10th Cir. 1967).

■ The standards applicable to burden of proof in an entrapment case are discussed in *Martinez v. United States, supra.* It was said there that the fact that an accused asserts the affirmative defense of entrapment does not operate to shift the burden of proof to him, but when the defense is raised the burden is on the government to prove beyond a reasonable doubt the defendant's guilt including the fact that entrapment did not occur. The *Martinez* court went on to say that entrapment is present as a matter of law only where the evidence is undisputed. As we have indicated above, entrapment was not proven as a matter of law in this case. *Cf. United States v. Gurule, supra,* at 23.

■ The question remains whether the government was bound to introduce independent evidence, for example, that of the government agent Hopkins, to counteract the testimony of the appellant. Since the entrapment, as we have said, was not established to the level that questions of fact as to its existence no longer were present, it was unnecessary for the government to proceed affirmatively. Questions of fact arose from inferences to be drawn from the testimony of appellant and from the testimony

of the other witnesses as well. Appellant relies on *United States v. Bueno,* 447 F.2d 903 (5th Cir. 1971), *cert. denied,,* 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973), in support of his contention that he was entitled to a dismissal in the light of the government's failure to come forward with evidence contradicting the appellant. Although it is doubtful that the *Bueno* doctrine would apply to the facts of this case since there are clear factual disputes on the entrapment issue, nevertheless, it should be mentioned that this court in *United States v. Gurule, supra,* rejected this per se doctrine and indeed the Fifth Circuit would appear to have also rejected it.[1]

We then hold that in this case the appellant's uncorroborated testimony was not such as to compel the government to offer evidence responsive to that of appellant. Among the strong evidence that defendant was not entrapped was the showing that defendant obtained a large quantity of drugs in Akron, Ohio. He transported it to Colorado and when he met with Agent Roth he negotiated a further delivery. This and other evidence strongly supported the jury's verdict that this was not entrapment either in fact or in law.

### III.

■ The point raised with respect to the alleged error of the court in refusing to suppress the cocaine which was seized in the motel room grows out of the failure to get a warrant after it became apparent that appellant had the cocaine in his possession. It appears from the evidence, however, that the knowledge of the agents that the defendant had the cocaine was derived from the defendant by Roth. At that time Roth gave a signal which resulted in the other agents coming into the room and seizing the cocaine. Contrary to the contention of appellant, there was not time to obtain a warrant. Defendant acknowledged to the agents after he was arrested that it was cocaine and that it was his. He consented

---

1. *See United States v. Soto,* 504 F.2d 557 (5th Cir. 1974); *United States v. Workopich,* 479 F.2d 1142 (5th Cir. 1973). These cases hold that merely because the government does not offer testimony rebutting the defendant's testimony does not mean that the defense is established as a matter of law.

to their opening the suitcase. No error is apparent.

## IV.

 Nor can it be said that it was error for the court to deny the motion for a mistrial based upon the court's alleged lack of respect for defense counsel. The actions complained of consisted of interruptions of the defendant's closing argument and the administering of mild admonitions. On one occasion the trial court corrected defense counsel when he predicted that the judge would tell the jury that if they harbored any doubts whatsoever they would have to acquit. The judge admonished counsel for expressing his personal beliefs. Counsel again expressed a personal opinion. In both instances the judge limited his remarks to correction of what appeared to him to be an improper argument. From what was said and from the reactions of counsel, it is impossible to conclude that this constituted error calling for a mistrial.

Upon a consideration of the whole record, we conclude that the points relied on are wholly lacking in merit.

The judgment of the district court is affirmed.