STATE of Missouri, Respondent,

v.

Darlene WILLIS, Appellant.

No. 64948.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1983.
Rehearing Denied Jan. 17, 1984.

Ben K. Upp, Springfield, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

BILLINGS, Judge.

Defendant Darlene Willis was court-tried and convicted in Greene County for the sale, distribution and delivery of cocaine in violation of §§ 195.017.4, and 195.020, RSMo 1978, and sentenced to five years imprisonment. The court of appeals, relying on *State v. Weinzerl,* 495 S.W.2d 137 (Mo.App.1973), concluded the State had failed to carry its burden of proof on the issue of defendant's entrapment and reversed the conviction. We ordered the case transferred because of the general interest and importance of the issue involved and for the purpose of reexamining the existing law relative to the defense of entrapment. We review the case as an original appeal [Mo.Const. Art. V, § 10] and affirm the conviction.

Defendant's single point is that she was entitled to a judgment of acquittal at the close of all of the evidence because the evidence was insufficient as a matter of law to support the guilty verdict for the reason that she presented uncontradicted evidence of her entrapment. Because of the issue thus framed, we must in this review recast the evidence and all favorable inferences reasonably arising therefrom in the light most favorable to the verdict. Conversely, we are required to reject and ignore all contrary evidence and inferences. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). Under the foregoing standard of review, the fact finder, the trial court in this instance, could reasonably find the facts as hereinafter set forth.

Officer Clark was working as an undercover drug agent for the Springfield Police Department during May, 1980. He was using Perry Leslie, a paid informant and a nephew of the defendant, in attempting to make purchases of illicit drugs. Leslie told Clark defendant "was into drugs" and on May 24, 1980, they contacted defendant at her home concerning a purchase of methamphetamine. Defendant said she could get the drug but would have to be taken to a telephone to call a certain person. The officer, informer, and defendant drove to another location where defendant made a telephone call. The trio then drove to Nichols Park in Springfield where they met Darrel Harrell, identified by defendant as a relative of her former husband. The officer purchased what was purported to be crystal methamphetamine. On the drive back from the park, defendant asked officer Clark if he would be interested in purchas-

ing some "coke" [cocaine]. She told the officer the price of the cocaine was $110.00 a gram.

Three days later, May 27, about noon, the officer and his informer went to see defendant and advised her they had the money for the cocaine. Defendant said she would have to make a telephone call and did so. She told Clark and Leslie her source would not have anything until about 2:00 p.m., and the price would be $115.00 a gram. Clark and Leslie left and returned at 2:00 p.m. Defendant made another telephone call and reported "he wouldn't have it until about 5:00 p.m.". Again, Clark and Leslie left defendant but returned to her place of residence at the appointed time. She got into the car with the two men and told them they had to go to Dub's Lounge in south Springfield to pick up the cocaine. When they arrived at their destination, defendant told Clark to park in the parking lot of the lounge. Defendant asked for the money to make the purchase and Clark gave her six twenty dollar bills. The two men waited in the car while defendant went inside the lounge. Defendant · returned to the car in about five or ten minutes and handed Clark four one dollar bills and four quarters and a vial which was later determined to contain cocaine, saying "here's your stuff" and indicated "it was good". She testified she had obtained the cocaine from Doug Brown, a friend of eleven years and a person she had dated.

By way of defense, defendant testified it was only because of her nephew's repeated solicitations to purchase drugs that she committed the instant crime; that her nephew had told her unless he was able to procure drugs he would be sent to the penitentiary and by getting some drugs it would help him get out of trouble with the law and get some charges he was facing dropped.[1]

Here, defendant contends there was no evidence to suggest she had the necessary predisposition to commit the charged crime and because her evidence injected entrapment into the case by virtue of the informer's pleas, entreaties, and solicitations, the State was required, under *Weinzerl, supra,* and cases following it,[2] to rebut the inference of unlawful inducement by substantial evidence of her predisposition to commit the offense and "where the evidence of inducement comes from defendant, the prosecution cannot rest on a challenge to the credibility of defendant; it must come forward with some contradictory evidence or suffer the adverse direction of a judgment of acquittal. *United States v. Bueno,* 447 F.2d 903, 906[2] (5th Cir.1971)." *State v. Weinzerl, supra,* at 141. In a nutshell, defendant argues that since her evidence of unlawful inducement was not contradicted by the State, the verdict cannot stand.

As this Court pointed out in *State v. Keating,* 551 S.W.2d 589, 592 (Mo. banc 1977), *cert. denied,* 434 U.S. 1071, 98 S.Ct. 1255, 55 L.Ed.2d 775 (1978), Missouri follows the "subjective" test on entrapment rather than the "objective" test. The former focuses on the "origin of intent" to commit the crime with emphasis on the "predisposition" of the accused. The "objective" test concentrates on whether or not the police activity shown should be condoned or rejected. And, as *Keating* notes, our decisions regarding entrapment as a defense are consistent with those of the United States Supreme Court. *Id.* at 593.[3]

1. Defendant did not know that Clark was a police officer, nor did she know Leslie was an informer for the police department. Her testimony does not make it clear how Leslie's attempting to buy drugs would keep him out of the penitentiary, out of trouble with the law, or result in pending charges being dropped. Leslie was out of Missouri at the time of the trial and did not testify.

2. *See, e.g., State v. Horton,* 607 S.W.2d 764, 766 (Mo.App.1980); *Merrill v. State,* 576 S.W.2d 561, 563 (Mo.App.1978); *State v. Devine,* 554 S.W.2d 442, 447–48 (Mo.App.1977); *State v. Long,* 550 S.W.2d 854, 858 (Mo.App. 1977).

3. The United States Supreme Court has discussed the law of entrapment on at least five occasions. *See Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed. 366 (1973); *Masciale v. United States,* 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d

Originally a judge created doctrine in Missouri,[4] the defense of entrapment has, since January 1, 1979, been legislatively codified. Section 562.066.2, RSMo 1978, provides in pertinent part:

An *"entrapment"* is perpetuated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct.

■ Initially we note that the *Weinzerl* court incorrectly states the elements of entrapment and the defendant's burden for injecting entrapment into the case. In *Weinzerl,* the court stated that the defendant injected the issue of entrapment by presenting substantial evidence of unlawful government inducement. *Weinzerl, supra* at 141. The statute, § 562.066, requires proof of *both* inducement to engage in unlawful conduct *and* an absence of a willingness to engage in such conduct. *State v. Coffman,* 647 S.W.2d 849, 852 (Mo.App. 1983).[5] By focusing only on unlawful government inducement, the *Weinzerl* test erroneously applies the objective theory of entrapment.

*Weinzerl* also incorrectly states that after the defendant injects the issue of entrapment into the case, the state must prove defendant's "predisposition". Rather, it is the defendant's initial burden to go forward with evidence showing both unlawful governmental inducement and defendant's lack of predisposition. The State then has the burden of proving lack of entrapment beyond a reasonable doubt. The State may

do so by rebutting either defendant's evidence of inducement or by showing his predisposition.[6]

Assuming the appellate court had correctly framed the defendant's initial burden for injecting entrapment into the case and held that substantial evidence of both governmental inducement and the defendant's lack of predisposition was present, the court would still not be correct in finding entrapment as a matter of law. In the instant case, the State's evidence contained no evidence of entrapment, *i.e.,* either unlawful government "inducement" or the lack of predisposition on the part of the defendant. Consequently, if the defendant was to have successfully relied on the defense of entrapment in this case, such evidence would, of necessity, have had to come from her own testimony.

In *Masciale v. United States,* 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958), defendant contended entrapment was established as a matter of law where he had testified he was induced by an informer "engaged in a campaign to persuade him to sell narcotics by using the lure of easy income" and this testimony was not contradicted, the Court said:

However, this testimony alone could not have this effect. While petitioner presented enough evidence for the jury to consider, they were entitled to disbelieve him in regard to [informer] and so find for the government on the issue of guilt.

356 U.S. at 388, 78 S.Ct. at 829. So it is here. Defendant's uncontradicted evidence of unlawful inducement by Leslie may be sufficient to raise a factual issue for the trier of fact but it does not follow that absent contrary evidence by the State, she

859 (1958); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

**4.** The historical development of the entrapment defense in Missouri is traced in Comment, Entrapment: A Critical Discussion, 37 Mo.L.Rev. 633 (1972).

**5.** This definition of entrapment is substantially identical to the commonly accepted federal def-

inition: "the government's inducement of the commission of a crime by one not predisposed to commit it." *United States v. Reyes,* 645 F.2d 285, 287 (5th Cir.1981).

**6.** The *Weinzerl* opinion suggests that the state can meet its burden of proof only by showing the defendant's predisposition to commit the crime. This analysis ignores the other possibility whereby the state rebuts the defendant's claim by showing no government inducement.

has established entrapment as a matter of law because the jury, or the court in a jury-removed case, may disbelieve her evidence.

*Bueno, supra,* relied on in *Weinzerl* for the proposition that the State cannot rest on a challenge to the defendant's credibility is unpersuasive. In *Weinzerl,* the court held that the defendant failed to present sufficient evidence to inject entrapment into the case, *supra* at 143, therefore, the court's discussion of the prosecutor's burden of rebuttal and the citation to *Bueno* was mere dicta. Furthermore, in *Bueno,* the Fifth Circuit was applying the objective theory of entrapment rather than the subjective origin of intent theory followed in Missouri and the vast majority of both state and federal jurisdictions.[7]

*Bueno* held that where a defendant testified, without contradiction, that the *government supplied both the narcotics and the buyer* for the contraband, the government was required to rebut this testimony or suffer judgment of acquittal. *Bueno, supra* at 906. In *United States v. Workopich,* 479 F.2d 1142 (5th Cir.1973), the Fifth Circuit itself rejected the *Bueno* rule and expressly followed the Supreme Court holding in *Masciale* in a true entrapment situation where the defendant actually arranged the purchase from one illegal dealing in narcotics. *Id.* at 1144–46. *See also United States v. Townsend,* 555 F.2d 152, 157–58 (7th Cir. 1977); Note, *Criminal Law—Entrapment Defense—Jury Entitled to Disbelieve a Defendant's Unrebutted Testimony Concerning Entrapment,* 6 Fordham Urb.L.J. 427 (1978). Even this limited application of the *Bueno* rule was laid to rest in *United States v. Hill,* 626 F.2d 1301 (5th Cir.1980), where the fifth circuit noted "the principle of *Bueno* was rejected and the case effectively overruled by the Supreme Court in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct.

1646, 48 L.Ed.2d 113 (1976)". 626 F.2d at 1306.

At least one federal court has suggested that *Bueno* was an aberration that was decided incorrectly because the court "quite apparently was unaware of *Masciale v. United States.*" *United States v. Jett,* 491 F.2d 1078, 1080 n. 3 (1st Cir.1974). *See also United States v. Rosenfeld,* 545 F.2d 98, 102 (10th Cir.1976), *cert. denied,* 430 U.S. 941, 97 S.Ct. 1572, 51 L.Ed.2d 787 (1977); *United States v. Gurule,* 522 F.2d 20, 24 (10th Cir. 1975); *United States v. West,* 511 F.2d 1083, 1088–89 (3d Cir.1975) (J. Weis dissenting); *United States v. Soto,* 504 F.2d 557, 560 (5th Cir.1974); *United States v. Johnson,* 495 F.2d 242, 244 (10th Cir.1974); and *United States v. Hayes,* 477 F.2d 868, 873 (10th Cir.1973).

In addition, the only two state courts that appear to have recently considered this issue also have held, on the basis of *Masciale,* that the prosecution is not required to present evidence of a defendant's predisposition to commit an offense where the only evidence of entrapment is supplied by the defendant's uncontradicted testimony. *Dravo v. State,* 46 Md.App. 622, 420 A.2d 1012, 1015–16 (1980); *Richert v. State,* 338 So.2d 40, 44–45 (Fla.App.1976). *See also People v. Gonzales,* 125 Ill.App.2d 225, 260 N.E.2d 234, 238 (1970).

Our position here is consistent with the rule set out in VII Wignore on Evidence, § 2034(3) (Chadbourn Rev.1978), "the *mere assertion of any witness* need not be believed, *even though he is unimpeached* in any manner, because to require such belief would be to give a quantitative and impersonal measure to testimony." *Accord, Cluck v. Abe,* 328 Mo. 81, 84, 40 S.W.2d 558, 559 (1931). This principle also applies where the defendant's entrapment defense is corroborated by other defense witnesses, since the jury may disbelieve any or all of his witnesses.[8]

---

7. *See e.g., Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *State v. Keating,* 551 S.W.2d 589, 592–93 (Mo. banc 1977), *cert.*

denied, 434 U.S. 1071, 98 S.Ct. 1255, 55 L.Ed.2d 775 (1978).

8. *See United States v. Anderton,* 629 F.2d 1044, 1047–48 n. 3 (5th Cir.1980) (uncontradicted testimony of both defendant and unwitting government agent that the agent pressured de-

■ We conclude that once the issue of entrapment has been injected into the case by the defendant and the State's case contains no evidence of entrapment, entrapment is not established as a matter of law and the fact finder is free to reject the defendant's allegations and conclude he was not unlawfully entrapped.[9] To the extent that *Weinzerl* and its progeny misstate the law relative to the defense of entrapment, they are no longer to be followed.

The trial judge, as trier of fact, was free to disbelieve defendant's evidence she was unlawfully induced to make the sale of cocaine to Officer Clark. The State's case was devoid of evidence of entrapment—either unlawful government inducement, or the lack of predisposition on the part of defendant.

The judgment of the trial court is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and BLACKMAR, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

DONNELLY, Judge, dissenting.

In *State v. Decker,* 321 Mo. 1163, 1169, 14 S.W.2d 617, 619–20 (1929), this Court declared:

> Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged in order to prosecute him therefor, it is the general rule that no conviction may be had, though

the criminality of the act is not affected by any question of consent.

I would reaffirm the *Decker* statement and holding to the end that " 'no shifting of the burden placed on the prosecution to prove guilt results in requiring to any degree or extent that an accused prove his innocence.' " *State v. Reeder,* 395 S.W.2d 209, 210 (Mo.1965).

I respectfully dissent.

---

fendant into making bribery payments was insufficient to establish entrapment as a matter of law since "the jury could have rejected their testimony").

**9.** *But cf. Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958) (holding that if the "undisputed testimony of the prosecution's witnesses" establishes or corroborates an entrapment defense, entrapment is established as a matter of law).