**STATE of Missouri, Respondent,**

v.

**Ricky JENKINS a/k/a Sherman R. Jenkins, Appellant.**

**No. WD 34542.**

Missouri Court of Appeals, Western District.

May 22, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied July 3, 1984.

Application to Transfer Denied Sept. 11, 1984.

Fred Duchardt, Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen. and Frank A. Rubin, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P.J., TURNAGE, C.J., and BERREY, J.

BERREY, Judge.

This is an appeal from the Circuit Court of Platte County where the defendant was convicted of burglary, first degree.

On appeal defendant raises two points. First, that defendant was entrapped into the commission of the offense and secondly, that the state failed to present evidence that defendant unlawfully entered the residence possessed by Charles Gatschet.

Judgment affirmed.

On the evening of December 30, 1980, Charles W. Gatschet, Jr. was at his home (owned by his parents) with two friends (his parents were not at home) and he was in constructive possession of the premises.

He received a call from Platte County Sheriff Thomas alerting him to a possible burglary, subsequently deputies arrived

and requested he and his friends go upstairs to his room, turn off the lights and wait. He did as requested. About ten to fifteen minutes later he heard a wrenching at the back door, later he heard a window break and a police officer yell, "Freeze, police."

Charles Pierce, a detective on the Platte County Sheriff's Department, testified he was contacted by the sheriff's dispatcher during the evening hours of December 30, 1980, that he had a message to contact Kathy Burgman, which he did.

Miss Burgman advised Detective Pierce that sometime around midnight, December 30, 1980, two burglaries would take place, one in Atchison, Kansas, and the other in northern Platte County.

Burgman had been working with Pierce on previous narcotic cases as an informant. She had received either money; or leniency in some case pending against her. Pierce knew nothing of the burglary plans prior to the call from Miss Burgman and had not expected such information.[1]

Pierce then contacted Chief Pickman of the Atchison City Police Department and Sergeant Bill Zerbe head of the Platte County Sheriff's Department investigation unit. The sheriff was notified as was Captain Price, head of the Platte County Sheriff's Department tactical unit.

Miss Burgman told Pierce the purpose of the burglary was to steal guns and silver and advised the residence of Charles Gatschet was where the burglary would occur.

Burgman told Pierce, "that it was already setup, it was arranged, a decision had been made", up until that time he had not guided Burgman in arranging it, he had given her no directions.

Pierce then met with Deputies Tharp, Mollett and Carter and proceeded to the residence, picking up Sergeant Zerbe en-route.

Sergeant Zerbe positioned himself inside the home and from the first sounds of attempting to open the interior garage door until entry was gained approximately twenty to twenty-five minutes elapsed. Entry was attempted at the interior garage door, front door and every window around the perimeter of the residence. Finally, the screen on a front window was cut and the screen removed. The exterior storm window was broken then the interior window was broken. Zerbe heard two suspects whispering. He then observed a man enter through the window and squat on a credenza located under the window. At that point the suspect flashed a light on Zerbe who immediately turned on the lights, aimed his shotgun at the defendant and ordered him to freeze. Two feet separated them. The defendant leaped backwards out through the window and fled.

Upon their arrival Officer Pierce was staked out 120 yards south of the residence, he heard glass break and sounds of prying. He then heard Zerbe yell, "Chuck, he's running".

Miss Burgman was taken into custody at the scene and gave defendant's address to officers. The officers proceeded to Atchison, Kansas, obtained a search warrant for defendant's house and found him there hiding under a pile of clothes. He was transported to the Atchison County Jail, given the *Miranda* Warning, interrogated and admitted his participation in the burglary.

Defendant Jenkins testified in his own behalf regarding a letter he had written the Prosecuting Attorney from the Atchison county jail following his arrest. He alleged, "Kathy kept telling me to drink it up". That, "we had been drinking and taking drugs together." Jenkins was driving his own vehicle and, "just went along with what she was asking me to do". Jenkins testified, "I wanted not to go down

---

1. Even though there was no entrapment in this case, it must be remembered that Officer Pierce testified he was not aware of the planned burglary before the call from his informant; an obvious attempt to disassociate himself from her act. He must bear in mind he cannot dis-

own an informer who acts on her own. "The government cannot make such use of an informer, then claim disassociation through ignorance." *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958).

there." That, "Yes, I did try to leave" and "Well, I actually stopped myself."

The Prosecuting Attorney asked, "You stopped yourself from leaving, so you made the decision to stay and burglarize the Gatschet residence. Is that what your're telling the jury?" To which defendant answered, "Yes."

Defendant then admitted to a felony conviction in 1970 in Minnesota, a conviction in 1975 of a theft charge in Kansas, and 1980 conviction of a felony possession charge.

The entire gist of defendant's defense is that he was entrapped into committing the offense by Miss Burgman, a "white lady" who the defendant alleges supplied him with drugs and liquor, and had sex with him. He told her at least ten different times he wanted to go home. At the scene he protested that he wanted to go home and he was dizzy and twice tried to leave.

Defendant stated he heard Burgman on the phone about 10:30 p.m. on the night in question. "She told them she had one of the guys with me and couldn't get the other to come along." "I remember her saying something about, 'I can't give you his name right now, but just keep an eye out for us. Don't get me busted.'"

Despite overhearing this conversation defendant continued to stay with Burgman in their criminal escapade.

Defendant was asked, "So, you knew what you were getting ready to do? You knew you were going to commit a crime and you chose to stay?"

His answer, "Yes."

▪ The defendant relies heavily on *State v. Devine*, 554 S.W.2d 442 (Mo.App. 1977). Would that he were of the character and reputation of Devine! He is not, having thrice been convicted of felonies. He does not meet the two-prong test as set forth in *State v. Willis*, 662 S.W.2d 252 (Mo. banc 1983). He may have shown government inducement, he cannot show a lack of predisposition. To show entrapment the defendant must show both an inducement to engage in unlawful conduct and an absence of a willingness to engage

in such conduct. *Willis*, at 225. Even assuming the evidence showed an inducement, it did not show an unwillingness to commit the crime with which he was charged. Absent evidence from the state which would allow the jury to find both elements of entrapment, the jury was free to disbelieve defendant's evidence claiming entrapment; entrapment was not established as a matter of law. *Willis* at 257. Therefore, the state had no duty to introduce evidence bearing on entrapment.

For the second point relied on, appellant asserts the state failed to prove he was not lawfully on the premises.

Appellant relies on *State v. Chandler*, 635 S.W.2d 338, 342 (Mo. banc 1982), wherein the court held:

> It is necessary to a conviction that the evidence support the finding beyond a reasonable doubt that appellant knew he was entering the premises unlawfully. In other words, appellant knew he had neither license nor privilege to enter. It is further necessary that the evidence support a finding beyond a reasonable doubt that appellant made that entry for the purpose of committing a crime in the apartment.
>
> The evidence as to knowledge of unlawful entry by appellant and intent on his part, at the time of entry, to commit a crime in the apartment is *circumstantial* in nature in this case buttressed by appellant's statement during and after the assaults. However, this evidence leaves no reasonable basis for concluding anything other than that the appellant and his two companions were acting together throughout the whole affair, *that the appellant knew he had neither privilege nor license to enter the apartment* and that the entry was done to commit a crime (emphasis added).

▪ It is abundantly clear from the record and beyond a reasonable doubt that defendant entered the premises of the Gatschet family without permission, to steal guns and silver. The evidence as to knowledge of unlawful entry by appellant and

intent on his part at the time of entry to commit the crime is clear, and is buttressed by his statements and letter. The evidence leaves no reasonable basis for concluding anything except that appellant knew he had neither the privilege nor license to enter the house and that the entry was done to commit a crime. *State v. Chandler, supra.*

Further, it is patently clear that Gatschet Jr. was at home on the evening in question, with two friends, and in custody of the premises and that he did not give defendant permission to cut a screen and break two windows to gain entrance. The assertion of appellant that the state must affirmatively prove *no permission was given defendant by the actual owner* to enter the dwelling is, under the facts and circumstances herein, an absurdity of monumental proportions. Appellant's Point II is denied.

Judgment affirmed.

All concur.