STATE of Missouri,
Plaintiff/Respondent,

v.

Kwicha WORSTELL,
Defendant/Appellant.

No. 54654.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 21, 1989.

Richard A. Barry, III, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

SATZ, Judge.

Defendant, Kwicha Worstell, was convicted by a jury of Bribery of a Public Servant, § 576.010 RSMo.1986. She was sentenced to 60 days imprisonment and fined $5,000.00. She appeals. We affirm.

At trial, defendant properly raised the defense of entrapment and the jury was instructed on it. On appeal, defendant contends the state failed to meet its burden of proving lack of entrapment, and, therefore, she argues, the trial court erred in denying her motion for judgment of acquittal. We disagree.

■ "An 'entrapment' is perpetrated if a law enforcement officer ..., for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct." § 562.066.2 RSMo.1986. To determine whether a violation of this statute has occurred, we, in Missouri, use the subjective test of entrapment rather than the objective test. *State v. Willis*, 662 S.W.2d 252, 254 (Mo. banc 1983). The former focuses on the "origin of intent"; the latter focuses on whether the officer's activity shown "should be condoned or rejected". *Id.* Under the subjective test, the basic question is causation: whether the defendant's criminal conduct was caused by the creative activity of the officer or by the defendant's own predisposition. *Id.*

■ To raise the defense of entrapment, the defendant has the initial burden of showing, by substantial evidence, both the government's inducement to engage in the criminal conduct and his own lack of willingness to engage in that conduct. *See, e.g., State v. Coffman*, 647 S.W.2d 849, 852 (Mo.App.1983); *State v. Disandro*, 574 S.W.2d 934, 935–36 (Mo.App.1978). Once this burden is met, the state has the burden of proving lack of entrapment beyond a reasonable doubt. *See, State v. Willis*, 662 S.W.2d at 255. There was ample evidence from which a jury could find defendant was willing to engage in the conduct and, thus, was not entrapped.

The evidence shows defendant was employed by the Far East Steam Bath (Far East) in 1986. One September morning in 1986, Officer Daniel O'Connor (O'Connor) of the Bridgeton Police Department pulled over a car for speeding on Lindbergh Boulevard, near the Far East. Mark Patrick was the driver, and an "oriental female", later identified as Mrs. Patrick, was a passenger.

Mrs. Patrick got out of the car and went back to O'Connor's car, where O'Connor was completing a summons for speeding. O'Connor asked Mrs. Patrick to go back to her car; then, he followed her, gave Mr. Patrick the summons and explained to him the procedure for paying the fine at city hall or appearing in court.

O'Connor went back to his car, but heard Mrs. Patrick say she would "take care of the ticket." She took the summons from Mr. Patrick and he drove away. She then approached O'Connor, who, again, explained the proper procedure to respond to the summons. She replied that she "wanted to save the driver the points on the ticket and that she didn't want to respond to city hall and pay the ticket". She also said she was not sure what O'Connor was saying, and she asked him to accompany her into the Far East to get help from a "translator". O'Connor obliged, and they went inside.

Mrs. Patrick introduced O'Connor to defendant, and, while the two women were speaking to one another in a foreign language, they took O'Connor back to an office. The women combined their money, and defendant then told O'Connor "that she wanted to take care of the ticket and that she didn't want the driver to get the points and that she was willing to pay [him] $140.00 for that." After O'Connor again said he could not accept the money, defendant, still holding the money and the copy of the summons, said "she wanted to take

care of [the summons] under the table, no points", ... "off the record", and "she would exchange the $140.00 for the ticket."

. Concluding that he was being offered a bribe, O'Connor started to leave to report the incident. Defendant touched O'Connor's thigh and arm, said she would like to date a policeman and asked him if he ever had a massage. When O'Connor asked: "what type of massage?", defendant answered: "we'd call it a head job". O'Connor declined the offer and left without making an arrest.

O'Connor contacted his sergeant, obtained a small tape recorder [1] and returned to the Far East with four other officers. O'Connor entered the building alone and went to a room with defendant. With the tape recorder on, O'Connor repeated defendant's earlier offer, and, while he was doing so, "[s]he kept saying yes, yes" and "was again rubbing [his] arm and moving very close to [him], and putting [her] hands on [his] leg".

At that time, Chong Hwa Whitfield (Whitfield), a co-defendant, entered the room and escorted defendant out. O'Connor had not seen Whitfield before this. O'Connor again repeated the earlier offer in order to have it recorded on tape. Whitfield had the money and the copy of the summons in her hand. She asked O'Connor for the original. She said she wanted the ticket handled "under the table" and "off the record". When O'Connor again repeated the proper procedure for paying a traffic ticket, she said she was aware of that and again asked for the ticket.

At Whitfield's request, O'Connor went outside to his car and obtained the original. He returned, handed it to Whitfield, and she gave him the money and tore the original. O'Connor again left the building and returned with the other officers. Defendant was arrested. Whitfield was found in

a bathroom attempting to burn the ticket and to flush it down the toilet. A Sergeant Wacker reached into the toilet and retrieved a piece of the ticket. Wacker then arrested Whitfield.[2]

No retelling of this evidence is needed to support the conclusion that defendant knowingly offered O'Connor money to disregard his official duty; and, therefore, the evidence was sufficient to submit the charge of bribery to the jury.[3] Nor is a retelling of the evidence necessary to show that defendant's willingness to engage in her conduct was her sole volition, not induced by O'Connor. Defendant repeatedly stated she wanted "to save" the driver "points" on his license, and her comments that the payment of money was to be "off the record" and "under the table" were unsolicited as were her suggestions of sexual favors. This was sufficient to support a jury's finding that defendant was not entrapped.

Understandably, defendant views the evidence differently. She argues she had no interest in the disposition of the traffic summons. When O'Connor first came into the Far East with Mrs. Patrick, defendant contends, she thought it was a "done deal" and she thought she was to be a "translator" for Mrs. Patrick and she simply repeated what Mrs. Patrick said. The plausibility of this argument requires the evidence to be viewed most favorably to defendant. The trial court, apparently, did this in determining that defendant did carry her initial burden of raising or "interjecting" the defense of entrapment. *See, e.g. State v. Jackson,* 731 S.W.2d 348, 349 (Mo.App.1987). But, to determine whether the state met its burden of showing no entrapment, the evidence and inferences are viewed most favorably to the state and all contrary evidence and inferences are

---

1. The tape was played at trial and made available to the jury.

2. Defendant and Whitfield were both charged with Bribery of a Public Servant. These charges were consolidated and tried together. However, separate appeals were taken.

3. § 576.010 RSMo.1986 provides:

A person commits the crime of bribery of a public servant if he knowingly offers, confers or agrees to confer upon any public servant any benefit, direct or indirect, in return for:

. . . . .

(2) The recipient's violation of a known legal duty as a public servant.

disregarded. *State v. Gardner, supra,* 741 S.W.2d at 9.

Defendant attempts to bolster her argument by relying on her recorded conversation with O'Connor. We have listened to the tape, and it is not inconsistent with O'Connor's testimony at trial.

In another attempt to bolster her argument, defendant also characterizes O'Connor's behavior as "rather unusual", because he discussed the traffic summons with a third party, Mrs. Patrick, and then went "out of his way ... to locate a 'translator' ... to 'explain' the ticket" to her. This attempt is nothing more than an indirect attack on O'Connor's credibility, an issue properly submitted to and determined by the jury. *State v. Chunn,* 701 S.W.2d 578, 584 (Mo.App.1985). The jury must have found O'Connor's conduct proper and his testimony credible.

■ Defendant next contends the trial court improperly rejected her request for a mistrial. During defendant's cross-examination of O'Connor, the following colloquy took place:

Q: And he [Mr. Patrick] pulled up in front of the Far East Steam Bath?

A: Yes, sir, steam bath massage parlor.

Defendant objected and asked for a mistrial, arguing, as she does here, that there was no foundation for characterizing the Far East as a "massage parlor" and to do so, in effect, characterized defendant, an employee of the Far East, as a "law-breaker ... predisposed to commit other crimes." Therefore, defendant contended at trial, as she contends here, O'Connor's characterization prejudiced her. We, like the trial court, find no prejudice.

O'Connor's reference to the Far East as a "massage parlor" was not the first time this reference was made. During voir dire, the prosecutor referred to the Far East as the "Far East Massage and Steam Bath." Defendant objected and asked for a mistrial, arguing that the name of the Far East was "Far East Steam Bath." The

prosecutor responded that the business license reflects the type of business as "massage and steam bath." The trial court denied defendant's request for a mistrial but, at defendant's request, instructed the prosecutor not to refer to the Far East as a "massage parlor."

Also, during voir dire, a venire woman used the term massage parlor in one of her responses, and defendant again objected and renewed her request for a mistrial. The prosecutor presented the business license to the court, without objection.[4] The court noted the reference to "Steam Bath & Massage" in the license, said, therefore, the use of the term at trial was not "inappropriate" and denied defendant's motion for a mistrial.

Then, during direct examination, O'Connor referred to Far East as the "Far East Massage Parlor", but defendant made no objection. Finally, on cross-examination, O'Connor made the same reference, the reference now in issue on appeal.

■ The motion for a mistrial is a drastic remedy, granted only with great caution and in extraordinary circumstances. *State v. Lee,* 654 S.W.2d 876, 879 (Mo. banc 1983). We will disturb a trial court's refusal to grant this drastic remedy only if the refusal is an abuse of discretion. *Id.* The trial court's consistent rejection of defendant's requests for a mistrial, in particular, the rejection in issue here, was not an abuse of discretion.

O'Connor's reference to the Far East as a "massage parlor" does not necessarily carry an unsavory or unfavorable connotation. Being a masseuse and operating a massage parlor are not necessarily crimes; nor do they necessarily suggest criminal activity. Defendant, herself, referred to her profession as "giving massages" and testified she was working at the Far East to learn to give massages. More important, perhaps, the trial court reviewed the Far East's business license, without objection, and defendant does not dispute the

---

**4.** The license was neither marked nor formally introduced into evidence. Defendant, however, "deposited" the license with this Court. The license does show the business to be "Steam Bath & Massage."

license shows Far East's business to be "Steam Bath & Massage."

Generally, evidence tending to prove other crimes is inadmissible, but, obviously, this rule does not apply when, as here, there is no evidence linking the defendant with other crimes. *E.g. State v. Pilchak*, 655 S.W.2d 646, 649 (Mo.App.1983). O'Connor's reference simply did not link defendant to another crime.

■ Defendant also contends the prosecutor's closing argument was prejudicial and requires a new trial. At trial, defendant made no objection to the remarks in question and, therefore, requests us to consider the remarks as plain error. We do so but find no "manifest injustice or miscarriage of justice." Rule 29.12(b).

We previously noted that defendant and her co-defendant, Chong Hwa Whitfield, were each charged with bribery and were tried together. In the first part of the prosecutor's closing argument, she said of defendants:

> If they want to do business, they have to abide by our laws, by our rules, and I submit to you that the people that are doing business here that have lived here ten years, that are married to Americans, speak the language and then the system [sic], and what they're attempting to do today is to pull the wool over your eyes and say that's not good enough for me. If I can get away with it, I will. Well, that's not our way of doing justice, and I want to to tell them that.

Then, in the second half of her closing argument, the prosecutor said:

> They've lived here long enough and are used to wheeling and dealing.
>
> .  .  .  .  .
>
> But I submit to you that the only verdict to return is as to each of these women is a verdict of guilty, to send the message to others like them and to them that you will not tolerate this kind of conduct.

Defendant views these remarks as repeated, specific references to both defendants as foreigners for the purpose of discrediting them because they are not like us; an appeal to decide the case on "racial and ethnic prejudice" rather than on the facts and the law.

At first reading, defendant's argument has facial plausibility. But defendant conveniently forgets that part of the defense in this case may have been Mrs. Patrick's and the defendants' inability to understand Officer O'Connor, because they are of "foreign" birth and had limited understanding of the English language. Thus, defendant called Mr. Patrick as a witness and this exchange took place:

> Q: And what is your present occupation?
>
> A: I'm a professional student.
>
> .  .  .  .  .
>
> Q: Now, how extensive is [Mrs. Patrick's] command or was her command of the English language on that day?
>
> .  .  .  .  .
>
> A: Her command of the English language then was very limited.

Apparently, with this in mind, the prosecutor formed some of her remarks to preclude the jury from using the defendants' foreign birth and resulting unfamiliarity with our law and language as an explanation for defendant's unacceptable conduct and suggestions. This can readily be seen by reading the prosecutor's remarks preceding those remarks selected by defendant. We set out the added remarks in capital letters:

> (In first half of prosecutor's closing argument)
> THERE'S AN EXCHANGE [between O'Connor and Whitfield], AND LISTEN CAREFULLY ON THE TAPE. YOU CAN HEAR HER TEAR UP THAT TICKET IF YOU LISTEN VERY CAREFULLY. WHY DOES SHE TEAR UP THE TICKET? IS THAT A LEGAL WAY OF DOING BUSINESS? SHE DOES BUSINESS IN THIS STATE. SHE'S BEEN HERE LONG ENOUGH TO UNDERSTAND THE ENGLISH LANGUAGE. THEY RUN A BUSINESS. THEY WORK A BUSINESS DEAL WITH AMERICANS, THEY DEAL WITH ENGLISH PEOPLE, DEAL WITH AMERICAN MONEY

THEY KNOW THE AMERICAN SYSTEM. DON'T LET THEM KID YOU THAT THEY DON'T, BECAUSE THAT'S WHAT THEY'RE TRYING TO DO.

. . . . .

If they want to do business, they have to abide by our laws, by our rules, and I submit to you that the people that are doing business here that have lived here ten years, that are married to Americans, speak the language and then the system [sic], and what they're attempting to do today is to pull the wool over your eyes and say that's not good enough for me. If I can get away with it, I will. Well, that's not our way of doing justice, and I want to to tell them that.

(In second half of prosecutor's closing argument)

WHAT THEY'RE TRYING TO PRESENT TO YOU IS TWO INNOCENT FOREIGN PEOPLE IN OUR COUNTRY THAT DIDN'T UNDERSTAND WHAT WAS GOING ON AND THAT OFFICER O'CONNOR TOOK ADVANTAGE OF THEM. I THINK YOU CAN DETERMINE FROM THE EVIDENCE THAT THAT'S NOT THE CASE. They've lived here long enough and are used to wheeling and dealing. THAT'S WHAT THEY WERE DOING HERE, AND HE [defense counsel] SUBMITS TO YOU THAT HE DOESN'T WANT YOU TO MAKE A MISTAKE. HE [defense counsel] WANTS YOU TO CORRECT A MISTAKE THAT WAS MADE BY OFFICER O'CONNOR BY RETURNING A VERDICT OF NOT GUILTY.

. . . . .

But I submit to you the only verdict to return is as to each of these women is a verdict of guilty, to send the message to others like them and to them that you will not tolerate this kind of conduct.

Read together, these remarks are not an appeal to bigotry but a request not to forego common sense.

Defendant also complains the following reference to Mr. Patrick in the prosecutor's closing argument was just another example of an appeal to racial prejudice:

What is Mr. Patrick telling you, the professional student. He wasn't even there. He wasn't there. He was married to—he's married to a Korean woman.

These remarks also must be read in context.

IS (DEFENDANT'S EVIDENCE) BELIEVABLE? What is Mr. Patrick telling you, the professional student. He wasn't even there. He was married to—he's married to a Korean woman. WHAT HE DOES TELL US IS THAT HE UNDERSTANDS THEM. HE CAN UNDERSTAND HIS WIFE. HE WASN'T THERE WHEN EVERYTHING TOOK PLACE. HE ADDS NOTHING TO IT, AND LET'S FOCUS AGAIN ON OR NEUTRAL WITNESS . . .

Sensibly read, in context, this is is not an attempt to destroy Mr. Patrick's credibility because he is married to a Korean woman and those married to Koreans or foreigners are necessarily suspect; rather, it is an attempt to demonstrate Mr. Patrick's testimony was irrelevant—he was not at the scene of the bribery. Moreover, the prosecutor's remarks suggest this testimony is suspect because Mr. Patrick was sympathetic with defendants, who, like his wife, are Korean employees of the Far East.

Although not artfully made, the prosecutor's argument is not clearly an appeal to bigotry rather than justice. Certainly, it could not have caused "manifest injustice or miscarriage of justice" *State v. Miller*, 699 S.W.2d 140, 142 (Mo.App.1985).

Judgment affirmed.

SMITH, P.J., and STEPHAN, J., concur.