STATE of Missouri, Respondent,

v.

Edward Lynn MUNOZ, Appellant.

No. WD 72754.

Missouri Court of Appeals,
Western District.

Aug. 2, 2011.

Ellen H. Flottman, Assistant State Public Defender, Columbia, MO for Appellant.

Chris Koster, Attorney General, Robert J. (Jeff) Bartholomew, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division IV: LISA WHITE HARDWICK, Chief Judge, Presiding, and JAMES EDWARD WELSH and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Edward Munoz ("Munoz") appeals his conviction after a bench trial in the Circuit Court of Randolph County, Missouri, for distribution of a controlled substance, § 195.211, RSMo Cum.Supp.2010, for which he was sentenced to five years imprisonment, arguing that the trial court erred in overruling his Motion for Judgment of Acquittal at the Close of the State's Evidence and finding him guilty because he claims there was insufficient evidence to support his conviction in that he claims unlawful entrapment. We affirm.

### Factual and Procedural Background [1]

Munoz and Aron Kilgore ("Kilgore") became acquainted in 1999 or 2000. The friendship between the two developed during the time they spent together as fellow inmates in the Department of Corrections, then continued over the years through conversations by cell phone calls and text messages. During the five years preceding the drug transaction that is the subject of this appeal, they had become close friends, even though pursuant to the guidelines of their respective probations they were not to associate with one another.

Kilgore was arrested for driving while intoxicated around February of 2009, and soon thereafter, he initiated contact with Detective Bobby Calvert of the North Missouri Drug Task Force. Kilgore revealed to Detective Calvert information about people from whom he could purchase narcotics, specifically identifying Munoz. Kilgore was instructed by Detective Calvert to call Calvert when he had a drug transaction arranged.

Kilgore began a series of text messages and calls with Munoz telling Munoz that he needed to make some money for lawyer fees and to pay back a debt he owed to his mother, and asking him if he knew "where I could get anything, meth or ice." Munoz responded, "Let me see what I can do, and I'll get back with you." Over the following few days, Kilgore and Munoz exchanged thirty to fifty text messages arranging the drug transaction.

After a drug transaction had been arranged for March 5, 2009, Detective Calvert met with Kilgore in a parking lot in Moberly, Missouri. Kilgore gave Detective Calvert the details of the communications between he and Munoz and of the proposed transaction. After an initial delay of one or two hours, Munoz texted Kilgore to tell him the transaction "was a go" and that Kilgore should drive his vehicle and pick up Munoz and they would then drive to another location to consummate the transaction. Pursuant to regular procedure for such an operation, Detective Calvert searched Kilgore and his vehicle, supplied him with $280 for the drug transaction, and placed a recording device on his person before he left.

Detective Calvert followed Kilgore in a separate vehicle. In an alleyway, Kilgore picked up Munoz and Harold Searcy, another person known by Munoz and Kilgore to be involved in the drug trade. The three drove around and met up with another vehicle. Munoz exited Kilgore's vehicle and talked to the people in the other vehicle and returned to speak with Kilgore at his vehicle. Thereafter, the money Detective Calvert gave Kilgore was exchanged

---

1. When reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we view all evidence and draw all inferences in the light most favorable to the State, and disregard all evidence and inferences to the contrary. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998).

for methamphetamine from someone in the other vehicle.

Detective Calvert then followed Kilgore's vehicle back to Munoz's residence. When Kilgore left, Detective Calvert followed him to MFA, where they had agreed to meet after the transaction to recover the drugs. At MFA, Detective Calvert again searched Kilgore and his vehicle and also recovered the recording device and the bag of methamphetamine.

The State charged Munoz with distribution of a controlled substance. Munoz waived a jury trial. The trial court found Munoz guilty beyond a reasonable doubt and sentenced him to five years in the Department of Corrections to run concurrently with the sentences he was already serving. Munoz appeals.

## Waiver

■ In his sole point on appeal, Munoz asserts that the trial court erred in denying his Motion for Judgment of Acquittal at the Close of the State's Evidence ("Motion"). Any claim of error in the denial of a motion for judgment of acquittal at the close of the State's evidence is waived when the defendant subsequently presents evidence on his own behalf. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992); *State v. Gaines,* 316 S.W.3d 440, 452 (Mo.App. W.D.2010). Here, after the State presented its case and rested, Munoz filed his Motion. When his Motion was denied, Munoz proceeded to present evidence in support of his case. By doing so, Munoz waived any claim of error in the trial court's denial of his Motion. Although Munoz waived this claim of error, we provide a review of the merits of his claim *ex gratia.*

## Standard of Review

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Vandevere,* 175 S.W.3d 107, 108 (Mo. banc 2005). We examine the evidence and inferences in the light most favorable to the verdict, and we ignore all contrary evidence and inferences. *Id.*

## Entrapment

■ On appeal, Munoz argues that the evidence at trial proved beyond a reasonable doubt that he would not have sold the methamphetamine if he had not been "entrapped" by Kilgore.

The defense of entrapment is codified at section 562.066, RSMo 2000:

1. The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because he was entrapped by a law enforcement officer or a person acting in cooperation with such an officer.

2. An "entrapment" is perpetuated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct.

. . . .

4. The defendant shall have the burden of injecting the issue of entrapment.

■ "Missouri [courts] have adopted a two part, subjective test, on determining entrapment." *State v. Moore,* 904 S.W.2d 365, 368 (Mo.App. E.D.1995) (citing *State v. Willis,* 662 S.W.2d 252 (Mo. banc 1983)). To inject the issue of entrapment, a defendant must present evidence of both: (1)

"inducement to engage in unlawful conduct," and (2) "an absence of a willingness to engage in such conduct." *Willis*, 662 S.W.2d at 255. Initially, it is the defendant's burden to offer "evidence showing both unlawful governmental inducement and defendant's lack of predisposition." *Id.* If this burden is met by the defense, then it is the State's burden to prove lack of entrapment beyond a reasonable doubt, which may be done "by rebutting either defendant's evidence of inducement or by showing his predisposition." *Id.* "[O]nce the issue of entrapment has been injected into the case by the defendant and the State's case contains no evidence of entrapment, entrapment is not established as a matter of law and the fact finder is free to reject the defendant's allegations and conclude he was not unlawfully entrapped." *Id.* at 257.

Munoz admitted at trial that he participated in the drug transaction on March 5, 2009, but he claims that he was induced to do so by Kilgore's multiple entreaties to set up the drug deal and by his desire to help out a friend. The State's evidence did not confirm Munoz's version of events. To the contrary, the State argued that Munoz did not give Kilgore any indication that he wasn't interested in doing the deal and that he was ready and willing to supply Kilgore the drugs on request. Munoz had multiple opportunities to ignore Kilgore's requests and, later, to back out of the drug purchase arrangement even after he had expressed willingness to set it up. We conclude that there was sufficient evidence at trial from which the trier of fact could have reasonably found that the unlawful inducement prong of entrapment was not met.

■ The State further rebutted Munoz's allegation of entrapment by introducing evidence at trial showing Munoz's predisposition to engage in the transaction.

"Acts that reveal an individual's propensity for engaging in certain illegal activities refute a post-arrest claim of entrapment in that area." *Moore*, 904 S.W.2d at 369 (citing *State v. Johnson*, 728 S.W.2d 675, 679 (Mo.App. S.D.1987)). The evidence at trial revealed that Munoz was knowledgeable about the drug trade in Moberly. He admitted to being a user of marijuana, Xanax, cocaine, and methamphetamine. He also admitted his association with Searcy was a violation of his probation. He understood Kilgore's inquiry about whether he could get "anything" for him, and he participated in a completed drug transaction. "Evidence of a defendant's prior use, possession, or sale of drugs, or ability to supply drugs upon request constitutes evidence of predisposition sufficient to negate a defense of entrapment." *State v. Adams*, 839 S.W.2d 740, 743 (Mo.App. W.D.1992). We conclude that there was sufficient evidence at trial from which the trier of fact could have reasonably found that the unwillingness or lack of propensity prong of entrapment was not met.

Viewing the evidence and inferences in the light most favorable to the verdict, we find that the State presented sufficient evidence to support Munoz's conviction. Furthermore, the State's case contained no evidence of entrapment; therefore, entrapment was not established as a matter of law. *Willis*, 662 S.W.2d at 257. As the trier of fact, the trial court was free to disbelieve Munoz's testimony that he was unlawfully induced to distribute a controlled substance. *Id.*

Point denied.

## Conclusion

The trial court's judgment is affirmed.

LISA WHITE HARDWICK, Chief Judge, and JAMES EDWARD WELSH, Judge, concur.

Edward Munoz ("Munoz") appeals his conviction after a bench trial for distribution of a controlled substance. He contends there was insufficient evidence to support his conviction because he was unlawful entrapped.

**AFFIRMED.**