STATE of Missouri,
Plaintiff-Respondent,

v.

Rosalor MAJOR, Defendant-Appellant.

No. 37023.

Missouri Court of Appeals,
St. Louis District,
Division Two.

March 14, 1978.

Robert E. Heisler, Richard Fought, David M. Johnson, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Robert L. Presson, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Gary W. Brandt, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Presiding Judge.

Defendant was convicted by a jury of two counts of assault with intent to kill without malice. He was sentenced to three (3) years imprisonment on Count I and two (2) years on Count II. Defendant appeals from the judgment entered upon the verdict of the jury. We affirm.

We consider first defendant's attack upon the sufficiency of the evidence to sustain the conviction. We view the evidence and all favorable inferences reasonably deducible therefrom in the light most favorable to the State and all evidence to the contrary will be disregarded. *State v. Franco,* 544 S.W.2d 533, 534[1–4] (Mo.banc 1976); *State v. Mills,* 495 S.W.2d 715, 716[1] (Mo.App.1973).

The evidence supports the following statement of facts. On the evening of December 13, 1973, six police officers went to the vicinity of a house located at 1528 Hogan Street in St. Louis to make an undercover purchase of drugs. Officer Lewis went down the outside basement steps to the door and knocked on the door while the other officers stood back. When asked what he wanted, Lewis replied, "Four dime bags." The person on the other side of the door told Lewis to put his money through the hole in the door. Lewis responded that he wished to see the drugs first. The person then told him that they did not have anything. Following this, all of the officers approached the door. Sgt. Hamilton, Officers Hawkins and Morgan were in the lead. Officer Lewis was in the rear. Sgt. Hamilton knocked on the door, identified himself as a police officer and requested the occu-

pants to open the door. Immediately following Hamilton's request a shot was fired through the door from the inside. The police returned the fire and forced the door open. While they were forcing the door three more shots were fired from inside the building. Five to ten seconds passed from the time the first shot was fired until the officers gained entry. The first of the officers who came through the door saw defendant facing the door with a gun in his hand. Defendant turned to run and as he did so he dropped the gun and kicked it away. There were several other persons behind defendant who were in the act of fleeing as the police came into the room. Defendant was apprehended and placed under arrest. An examination of the gun revealed that it was in proper working order and contained two live and four spent cartridges. At least one shot fired from the gun struck the door. Tests also revealed that defendant had recently handled a gun. A search of the apartment lead to the discovery of a quantity of narcotics.

Defendant testified on his own behalf that he went to the Hogan Street address in search of his brother. He stayed and listened to the stereo. He stated that he heard shots fired and ran to the steps within the basement leading to the first floor where he was apprehended. He testified that he had not held or fired a weapon that evening. He said he had not handled a weapon since his discharge from the military service two years before this incident.

■■ Defendant argues that the conviction cannot stand because no one testified that defendant fired the gun and because Officer Lewis did not see the gun in defendant's hand.

A conviction may be sustained upon circumstantial evidence when the facts are consistent with each other and inconsistent with every reasonable hypothesis of defendant's innocence. The evidence, however, need not be absolutely conclusive of guilt nor demonstrate an absolute impossibility of innocence. *State v. Franco, supra.*

The first three officers who entered the room saw defendant with a gun in his hand.

Officer Lewis was in the rear and at the top of the stairway leading down toward the basement door at the time the officers broke in and saw defendant. The fact that Lewis testified that he did not see the gun in defendant's hand could be readily explained and in any case went only to the weight of the evidence. The jury could reasonably find that defendant was in the basement at the scene of the assault; he was seen holding the gun that had fired a shot that struck the door through which the policemen entered; and three other shots had been discharged from this gun. There were highly incriminating circumstances other than defendant's presence at the scene. *State v. Burks,* 521 S.W.2d 11, 14[2–6] (Mo.App.1975). The circumstantial evidence in this case was more than adequate to sustain a conviction on the charge submitted.

■■ The next issue for our consideration concerns rebuttal testimony produced by the State. After defendant testified that he had not handled a weapon for two years the State presented evidence of scientific tests tending to show that defendant had handled a weapon just prior to his arrest. Defendant complains that the opinion evidence of Dr. Steven Morris based upon the neutron activation test made of swabs taken from defendant's hand was inadmissible because there was no proper foundation for its admission in that there was no evidence from which the court could determine that the test was properly administered.

The record before us shows that Dr. Morris fully described the procedure employed in conducting the neutron activation analysis of the swabs used to wipe defendant's hands. Dr. Morris testified that the analysis was performed by passing the chemically treated swabs through the core of a nuclear reactor where they were bombarded with neutron particles. The swabs were then analyzed and a determination of the amounts of barium and antimony was made. Both elements are present in the gunshot residue left on the hands of a person who has handled or fired a weapon.

Dr. Morris testified that in his opinion the amounts of each substance found in the swabs indicated that defendant had recently handled or fired a weapon.

The neutron activation analysis as a scientific means of determining the presence of gunshot residue is now generally considered reliable and accurate and its results are admissible when there has been a proper foundation for its admission. *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976). The issue raised by defendant in this case, as we read it, goes to the manner in which the test was administered. The ready solution to that issue is succinctly answered in *Johnson* where the court said at 501, "Objections to the manner in which the analysis was conducted go to the weight rather than to the admissibility of the evidence." This contention is without merit.

■ Other issues sought to be raised are not properly before us for review.

Defendant's Point Relied On I reads: "The trial court erred in permitting the State to introduce over appellant's objection evidence of certain seized controlled substances in that the State did not sufficiently disclose the test results of such physical evidence as requested by Appellant's Motion to Inspect which was sustained prior to trial."

We do not find this specific issue raised in defendant's motion for new trial. Defendant has not identified the assignment of error in the motion for new trial that forms the basis of this contention.

Paragraph 3 of the Motion reads:
"3. The Court erred in allowing the State's witnesses to comment on alleged drugs that were seized in the raid on the apartment in which defendant was arrested."

This statement was insufficient to alert the trial court to a contention that defendant was not afforded the results of tests of controlled substances. It fails to point out the witnesses or class of witnesses who testified and the nature of their testimony or the reason the testimony is claimed to be erroneous.

■ Much the same can be said for paragraph 5 of the Motion for New Trial, which reads:
"5. The Court erred in refusing to grant defendant a mistrial, when the State introduced evidence that was ordered given to the Defendant in Defendant's Discovery Motion, but was not turned over to Defendant."

The statement fails to identify the evidence which was introduced which defendant had not obtained.

■ Rule 27.20(a) requires a motion for new trial to "[s]et forth in detail and with particularity . . . the specific grounds or causes therefor." The motion here does not preserve this point for our review. *State v. Gray,* 360 S.W.2d 642, 645[2, 3] (Mo.1962); *State v. Hill,* 371 S.W.2d 278, 281[2–5] (Mo.1963).

Point Relied On II reads:
"The trial court erred in permitting the State to introduce over appellant's objection evidence of certain seized controlled substances in that such testimony constituted evidence of another crime and therefore could only be irrelevant and highly prejudicial to appellant who was tried for a distinctly different offense."

The allegation of error raised by defendant in this point is raised for the first time on appeal. This objection was not made at trial nor presented to the trial court in the Motion for New Trial. An allegation of error not presented to the trial court in a Motion for New Trial cannot be raised for the first time on appeal. *State v. Fields,* 536 S.W.2d 56, 57[1] (Mo.App.1976); *State v. Webb,* 544 S.W.2d 53, 54[1, 2] (Mo.App. 1976).

■ Point Relied On III reads:
"The trial court erred in overruling defendant's Motion to Suppress all Physical Evidence in that such evidence was obtained by means of a warrantless entry unsupported by any clear showing of probable cause."

This specific issue was not raised in defendant's Motion for New Trial.

Paragraph 1 of the Motion reads:

"1. The Court erred in overruling defendant's Motion to Suppress All Physical Evidence."

As stated above Rule 27.20(a) requires the Motion for New Trial to "[s]et forth in detail and with particularity . . . the specific grounds or causes therefor." This statement fails to state any reason why it was error to overrule the Motion to Suppress and, as a result, preserves nothing for review. *State v. Anderson,* 375 S.W.2d 116, 119[5] (Mo.1964).

Point Relied On IV reads:

"The trial court erred in permitting State's expert witness to testify over appellant's objection on a subject which was beyond the scope of her expertise."

The point does not " . . . isolate and formulate the precise issue to be reviewed . . . " *State v. Murphy,* 508 S.W.2d 269, 276[8, 9] (Mo.App.1974). Nor does it advise the Court of the nature of the testimony and why it was beyond the scope of her expertise. This point is in violation of Rule 84.04(d) and provides us with nothing to rule upon. *State v. Atkins,* 545 S.W.2d 656, 658[3] (Mo.App.1976).

Finding no reversible error the judgment of the trial court is affirmed.

REINHARD and STEPHAN, JJ., concur.