**STATE of Missouri, Respondent,**

v.

**James Allen JACKSON, Appellant.**

No. 50763.

Missouri Court of Appeals,
Eastern District,
Division One.

April 21, 1987.

Motion for Rehearing and/or Transfer
Denied June 2, 1987.

Application to Transfer Denied
July 14, 1987.

Frank A. Anzalone, Clayton, for appellant.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Presiding Judge.

Defendant was convicted of delivery of a Schedule I controlled substance, Phencyclindine (PCP), in violation of § 195.020 RSMo. 1978. He was found to be a persistent offender, § 195.200.1(5) RSMo. 1978, and was sentenced to life imprisonment. Defendant appeals. We affirm.

Defendant contends the trial court improperly refused to instruct the jury on entrapment. We disagree.

"An 'entrapment' is perpetrated if the law enforcement officer or a person acting in cooperation with [the] officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct." § 562.066.2 RSMo. 1979. To determine whether a violation of this statute has occurred, we, in Missouri, use the subjective test of entrapment rather than the objective test. *State v. Willis,* 662 S.W.2d 252, 254 (Mo. banc 1983). The former focuses on the "origin of the intent"; the latter focuses on whether the officer's activity shown "should be condoned or rejected". *Id.* at 254. Under the subjective test, the basic question is causation—whether defendant's criminal conduct was caused by the creative activity of the officer or by the defendant's own predisposition. *Id.*

■ To raise the defense of entrapment, defendant has the initial burden of showing, by substantial evidence, both the government's inducement to engage in the criminal conduct *and* his own lack of willingness to engage in that conduct. *See, e.g., State v. Coffman,* 647 S.W.2d 849, 852 (Mo.App.1983); *State v. Disandro,* 574 S.W.2d 934, 935–36 (Mo.App.1978). To meet this burden, the defendant may use evidence adduced in the state's case. *See, State v. Willis,* 662 S.W.2d at 255. Once this burden is met, the state has the burden of proving lack of entrapment beyond a reasonable doubt. *Id.*

In the present case, defendant's counsel on appeal was not his trial counsel. Defendant's counsel on appeal must take the record as he finds it and so must we. Defendant did not testify at trial. He rests his claim for an entrapment instruction on the testimony, particularly, the cross-examination testimony, of a government informant, Lee Kuntz (Kuntz).

We view the evidence in the light most favorable to defendant. *State v. Taylor,* 375 S.W.2d 58, 59 (Mo.1965). Kuntz was sent to a rehabilitation center by a court, after his second conviction for "DWI". Kuntz met defendant at the center. Kuntz did not remember who initiated the conversations, but he thought he and defendant talked about drugs on Kuntz's first or second day at the center. He and defendant had numerous conversations at the center, about 20 to 25. He was not sure who first discussed procurement of drugs. Defendant, however, "indicated" to Kuntz "he knew some of the same people [Kuntz] had known ... and, [they] ... could do some ... business after [they] left the Center". They exchanged phone numbers when Kuntz was released.

About two weeks after Kuntz left, defendant phoned him. After that first conversation, they continued to talk by phone, but Kuntz was not sure what the exact sequence of phone calls was. During these conversations, Kuntz initiated a conversation about cocaine and heroin. At the center, he "was led to believe ... [defendant] was in the position and had the capability to obtain both of those drugs". From the time he left the Center until February, 1985, Kuntz talked to defendant by phone about 12 to 15 times.

In early February, Kuntz asked defendant "what was in the market". Defendant replied there was some "water, ... PCP". Shortly thereafter, in February, 1985, Kuntz and defendant agreed that defendant would procure and Kuntz would purchase "64 ounces of PCP". Kuntz then notified a DEA agent, Don Walton (Walton), about this transaction. The transaction was to take place on one day, but the

deal did not materialize. After several conversations, in which defendant said "his people were trying to get it together", defendant met Kuntz and Walton on February 15, 1985, and defendant handed a bottle of PCP to Walton. Defendant was then arrested.

Defendant distills what he perceives to be four critical facts from this synopsis of Kuntz's testimony. Kuntz and defendant exchanged telephone numbers so they could stay in touch with one another. Kuntz continued to contact defendant over a seven month period "to try to get a deal going". Kuntz initiated a discussion about the purchase of cocaine and heroin. Kuntz had a pecuniary interest in a drug transaction taking place, because he received renumeration each time he brought a culprit to the DEA. These facts, defendant contends, constitute substantial evidence the drug transaction was caused by Kuntz's creative and self-serving conivance. Therefore, defendant argues, the court was required to instruct the jury on entrapment. We disagree.

These facts do not constitute substantial evidence defendant was induced to commit the offense and he lacked the predisposition to commit it. The precise definition of "substantial evidence" still eludes the courts. Neither party here suggests one. No extended dissertation on the meaning of "substantial evidence", however, is needed here. To be substantial, the evidence, at least, must be sufficient to support a sensible inference defendant was not induced to commit the offense and had no predisposition to do so. The operative facts here are far less compelling than the facts in *State v. Coffman*, 647 S.W.2d 849 (Mo.App.1983), in which the appellate court affirmed the refusal of the trial court to submit an instruction on entrapment.

In *Coffman*, the government agent approached defendant to make a purchase, defendant responded he would have the drugs the next day, and, when the two met, defendant provided the drugs and the agent purchased them. *Id.* at 850. The agent had attempted to purchase drugs from defendant on several prior occasions,

but defendant had already sold his supply. *Id.* at 851. The court held there was no showing of an unwilling defendant even if inducement had been shown. *Id.* at 852. Predisposition of the defendant was shown by his prior possession of drugs and the fact he obtained drugs for friends. The agent's prior attempts at making a purchase were not sufficient to inject entrapment. *Id.* at 852.

Defendant here, like the defendant in *Coffman* showed no reluctance to engage in the transaction. Nothing in defendant's distillation of Kuntz's testimony suggests defendant's lack of predisposition or his unwillingness to complete the deal. According to Kuntz, defendant's stated knowledge of drugs circles in the community led Kuntz to believe defendant had the capability and was in the position to obtain drugs, and defendant offered to find the PCP for Kuntz. This certainly does not indicate an unwilling defendant. Moreover, defendant's statement that "Kuntz continued to contact defendant ... 'to try to get a deal going' " is inaccurate. Kuntz did not remember the exact sequence of phone calls between him and defendant, but it is clear that sometimes defendant would phone Kuntz and sometimes Kuntz would phone defendant. Furthermore, defendant's argument it took seven months to complete the drug transaction is unpersuasive. *Coffman*, reflecting common sense, teaches that even repeated attempts over time, made with a willing defendant, do not negate predisposition.

There is no indication Kuntz initiated the conversations about drugs at the Center. Nor is there any indication Kuntz persisted in conversations with an unwilling defendant. From Kuntz's testimony, it is clear defendant was well acquainted with drug traffic. At most, this evidence shows conversations that would take place between a willing seller and buyer. Thus, there is no evidence in the record to show Kuntz's conduct created a risk the offense would be committed by a person other than one ready to commit it. The only reasonable inference is defendant was ready to participate in the crime and Kuntz merely furnished defendant the opportunity. The op-

erative facts, even as perceived by defendant, do not support the inferences defendant was both induced and lacked the predisposition to commit the crime.

■ Defendant also contends the behavior of Kuntz "clearly bothered the jury". During its deliberation, the jury sent the question: "If we feel the man was entrapped does that change the bearing on the case as to guilty or not guilty". Defendant's argument is not strengthened by this incident.

Entrapment is a term of art. It has a specific legal definition and meaning. In many arrests, there is a certain amount of creative activity needed in order to outwit those intent on violating the law. Certain kinds of deception may have to be used. The law does not necessarily forbid that. Quite simply, the subjective test of entrapment distinguishes "between the trap for the unwary innocent and the trap for the unwary criminal". *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). A jury of lay persons, undisciplined in the law, does not make that distinction.

Judgment affirmed.

CRIST and KELLY, JJ., concur.