**STATE of Missouri, Respondent,**

v.

**Robert H. FOSTER, Appellant.**

**Robert H. FOSTER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 57364, 59235.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 4, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 14, 1992.

Application to Transfer Denied
Oct. 27, 1992.

Cheryl Rafert, Clayton, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant of five counts of attempting to promote child pornography in the first degree, §§ 573.025, 564.011, RSMo 1986,[1] one count of promoting child pornography in the second degree, § 573.035, and one count of abuse of a child, § 568.060. The court sentenced him to a total of twenty-five years imprisonment.

Defendant appeals his convictions and sentences and also appeals the denial of his Rule 29.15 motion. We affirm.

For clarity and convenience, we first address defendant's challenges that are specifically directed to the pornography charges, then his challenges to the child abuse charge and finally his general challenges.

### Submissibility: Child Pornography

■ Defendant argues that the state failed to make a submissible case on each of the charges against him. To determine whether the state made a submissible case, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences, and determine whether the evidence, so viewed, is sufficient for twelve reasonable people to find the defendant guilty beyond a reasonable doubt. *E.g., State v. Sanders,* 741 S.W.2d 739, 741 (Mo.App.1987).

1. All statutory references are to RSMo 1986, unless otherwise stated.

### Facts: Child Pornography, Counts I–VI

Defendant was arrested during the course of a sting operation. A police officer placed an advertisement in the Riverfront Times targeting pedophiles. Defendant responded to the advertisement, and a meeting was arranged. During the meeting, defendant showed the officer a number of slides he had taken of the buttocks and underwear of young girls between the ages of five and nine. In exchange for one of the slides, the officer handed defendant a copy of "Lolita" magazine which contained pictures of explicit child pornography.[2] Defendant photographed several non-consecutive pages of the magazine, but the negatives did not properly develop.

Defendant and the officer next met on the following morning. During this meeting, the officer showed defendant a videotape of five "Lolita" magazines. Defendant told the officer that he could trade the tape for homemade child pornography from Mr. Thomas Knaeble (Knaeble), a friend of defendant's. Defendant also asked the officer if he had brought more magazines; it was his intention to reproduce the items and take them to Knaeble to trade for other child pornography.

Over the next two weeks, defendant phoned the officer a number of times "to get the items [the officer] had ..., reproduce them, [and] trade them to Mr. Knaeble for items in his possession." The two met again, this time in the officer's unmarked car. During the meeting, the officer gave defendant several issues of the "Lolita" magazine and the pornographic videotape. Defendant told the officer he intended to exchange these items with Knaeble for Knaeble's homemade child pornography. Then, just as defendant got out of the car carrying the pornographic material, he was arrested by other police officers surveilling him.

### Submissibility: Promoting Child Pornography, First Degree § 573.025, Counts I–V

■ "Child pornography" is "any material or performance depicting sexual conduct,

2. The issue of whether these pictures were pornographic is not contested.

sexual contact, or a sexual performance ...; *provided, that it shall not include material* which *is not the visual reproduction of a live event*". § 573.010(1) (emphasis added). "Material", as used in this statute, is "anything printed or written, or any picture, drawing, photograph, motion picture film, or pictorial representation ... or any mechanical, chemical, or electrical reproduction". § 573.010(5). A person commits the crime of promoting child pornography in the first degree, "if, knowing its content and character, [the person] photographs, films, videotapes, produces, publishes or otherwise creates child pornography, or knowingly causes another to do so." § 573.025.1.

Defendant points out that he photographed photographs, and it was the latter photographs which were the source of the child pornography charges. His photographing of photographs, he argues, was "not the visual reproduction of a live event," and, therefore, his photographing fit within the exception to the definition of "child pornography". § 573.010(1). This interpretation is consistent with the statutory scheme, he argues, because the less serious charge of promoting child pornography in the second degree, § 573.035, is focused on distributors, and, therefore, the first degree offense, § 573.025, must be focused on those directly involved with the initial creation of the child pornography.

Defendant's interpretation of the statutory definition of "child pornography" and its statutory prohibition is strained, at best. Nowhere in the statutory language is there any indication that the prohibited "photographs, films" and the like must be originals; photographs of photographs which were made of "live events" are also visual reproductions of a live event. Moreover, the prohibition against "creating" child pornography does not limit the prohibition to originals. "Create" means to bring into existence or to invest with a new form. *Webster's Third New Int'l. Dictionary,* (1966). And, "produce" is a statutory equivalent to create. It means "to bring

forward ...; offer to view or notice." *Id.* Defendant attempted to "create" or "produce" child pornography.

Furthermore, defendant's interpretation would allow the clever pornographer to avoid prosecution for the promotion of child pornography in the first degree by simply photographing the original photograph, destroying the original and reproducing the photograph of the original. Finally, one of the purposes of the child pornography statutes is to protect children from exploitation. Defendant's interpretation destroys the ability to effectuate that purpose.

There is no reason to strain the limits of common parlance or legal jargon. Had the General Assembly intended to limit "visual reproduction of a live event," § 573.010(1), to the original reproduction, it would have so stated. In short, the statutory language prohibits any visual reproduction of a live event.

*Submissibility: "Promoting Child Pornography, Second Degree § 573.035, Count VI*

■ "A person commits the crime of promoting child pornography in the second degree if, knowing its content and character, he:

(1) ...

(2) Buys, procures or possesses child pornography with the purpose to furnish it to others.

§ 573.035

Defendant makes the bald statement that "there was no evidence that [he] intended to furnish the materials to another."

This conclusion is contradicted by the record. The record clearly shows that defendant intended to trade with Knaeble the videotape of child pornography defendant received from the officer. Defendant expected to get different items of child pornography in exchange from Knaeble.[3]

---

**3.** At oral argument, defendant's counsel understandably withdrew his argument that the state failed to show the persons depicted in the por-

nography in issue were under the "age of eighteen."

## Entrapment

Defendant contends the state failed to prove he was not entrapped. We disagree.

■ A person is entrapped only if the law enforcement officer or his agent "solicits, encourages or otherwise induces [that] person to engage in conduct when he was not ready and willing to engage in such conduct." § 562.066.2; e.g., *State v. Jackson*, 731 S.W.2d 348, 349 (Mo.App.1987). To determine whether a violation of this statute has occurred, we use the subjective test of entrapment rather than the objective. *State v. Willis*, 662 S.W.2d 252, 254 (Mo. banc 1983). The former focuses on the "origin of intent"; the latter focuses on whether the officer's activity "should be condoned or rejected." *Id.* at 254. Under the subjective test, the basic question is causation—whether the person's criminal conduct was caused by the creative activity of the officer or by the person's own predisposition. *Id.*

■ The defendant has the initial burden to show, by substantial evidence, both the officer's inducement and his own lack of willingness to engage in the criminal conduct. *Id.* at 255; *State v. Jackson, supra*, at 349; see, e.g., *State v. Coffman*, 647 S.W.2d 849, 852 (Mo.App.1983). To meet this burden, the evidence must be viewed in the light most favorable to the defendant, *State v. Taylor*, 375 S.W.2d 58, 59 (Mo.1964), and the defendant may use evidence adduced in the state's case. *See, State v. Willis, supra*, 662 S.W.2d at 255. Once defendant meets this burden, the state must prove lack of entrapment beyond a reasonable doubt. *Id.*

■ The facts here do not constitute substantial evidence that defendant was induced to promote child pornography and that he lacked the predisposition to commit it. The undercover officer did place an advertisement in the Riverfront Times in an attempt to attract pedophiles the police hoped to arrest through a sting operation. Defendant was known to the police to be a pedophile. However, he was not a specific target of this sting operation. It was hoped that defendant's acquaintance, Knae-ble, would be apprehended during the course of this sting operation.

Defendant, on his own initiative, responded to this advertisement by letter. In his letter, defendant, though as yet unsolicited, offered to trade slides with the party placing the advertisement. It was in response to defendant's letter that the officer initiated the first phone call to defendant and suggested they meet for a drink.

During their first face to face meeting, defendant was the first to produce slides showing young girls from five to nine in various stages of undress. It was only after defendant produced these questionable slides that the officer produced a copy of the Lolita magazine for defendant to view. Then, as soon as the officer produced the magazine, defendant took a camera from a bag he was carrying and photographed some of the contents of the magazine, without any prompting or suggesting by the officer.

The two met the next morning. At that meeting, defendant asked the officer if he had brought more magazines; it was his intention to reproduce their content and trade them with Knaeble for other child pornography. They also viewed a videotape containing five "Lolita" magazines, and, while doing so, defendant told the officer he would probably like his daughter.

During the next two weeks, defendant made numerous phone calls to the officer in an attempt to implement his plan to exchange child pornography with Knaeble. The next, and last, meeting was arranged to enable defendant to make copies of child pornography furnished by the officer, to trade those copies for other child pornography and bring the new items back to the officer.

This is not substantial evidence showing defendant was entrapped. The precise definition of substantial evidence still eludes the courts. However, to be substantial, the evidence, at least, must support a sensible inference that defendant was induced to commit the offenses charged and had no predisposition to do so.

Without belaboring the facts, defendant showed no reluctance to engage in the conduct in issue. To the contrary, he initiated the specific discussions and transactions in issue and it was he that kept them going. The facts do not show the officer's conduct created a risk that the offenses in issue would be committed by a person other than one ready to commit them. The only reasonable inference is that defendant was ready to participate in the crimes and the officer merely furnished him the opportunity. *See e.g., State v. Jackson, supra; State v. Coffman, supra; compare Jacobson v. United States,* — U.S. —, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

### Defective Information Counts I–VI

Defendant next contends the counts charging him with promotion of child pornography were defective and should have been dismissed. Defendant's contention rests on three basic grounds.

Defendant contends the pornography alleged in the counts was "not the visual reproduction of a live event." This argument is the same argument made by defendant in attacking the submissibility of the state's case. We have disposed of this argument.

■ Defendant next contends that § 573.025 and 573.035, respectively defining the offenses of promoting child pornography in the first and second degree, are unconstitutionally vague and overbroad. Defendant, however, has failed to preserve this issue for appeal.

He did not raise this issue at trial and, thus, failed to raise it at the earliest opportunity, *State v. Simms,* 643 S.W.2d 87, 89 (Mo.App.1982); nor did he raise it in his motion for a new trial. *State v. Major,* 564 S.W.2d 79, 82 (Mo.App.1978). Moreover, he did not develop this argument in the Argument portion of his brief; rather, he simply makes the bald statement that

> The statutes are unconstitutionally vague because the terms used in the statutes have uncertain or confusing meaning and people can differ regarding the statute's (sic) application.

However, § 573.010 defines most of the words and terms used in §§ 573.025 and 573.035. Neither the state nor we can discern which of these definitions defendant finds vague, uncertain or confusing in meaning. Thus, this argument, if it were preserved, would be deemed abandoned. Rule 30.06(d), (e); *State v. Jones,* 786 S.W.2d 926, 928 (Mo.App.1990); *State v. Sanders,* 619 S.W.2d 344, 349 (Mo.App. 1981).

■ Furthermore, even if we were to consider defendant's argument *ex gratia,* we would find it meritless. Sections 573.-025 and 573.035 are similar to the New York statutes in issue in *New York v. Ferber,* 458 U.S. 747, 762–66, 102 S.Ct. 3348, 3358–59, 73 L.Ed.2d 1113, 1127–28 (1982). In *Ferber,* the court found the New York statutes passed constitutional muster because they required some element of scienter and the depicted sexual conduct proscribed was suitably limited and described. *Id.* The resolution in *Ferber* resolves the issue here.

■ Defendant also contends the five separate charges of promoting child pornography in the first degree were one offense and, as a result, he was placed in double jeopardy by being subjected to multiple punishments for the same offense. However, in the Argument portion of his brief, defendant does not develop his argument; rather, he simply makes the bald statement that the state is prohibited from dividing one offense into component parts. Again, the failure to provide any analysis results in an abandonment of the argument. *State v. Jones, supra; State v. Sanders, supra.*

■ In the abstract, it is correct that neither multiple convictions nor multiple punishments may be obtained for one crime. Missouri, however, follows the separate or several offense rule rather than the same transaction rule. *E.g., State v. Treadway,* 558 S.W.2d 646, 651 (Mo. banc 1977), *cert. denied,* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978); *State v. Lulkowski,* 721 S.W.2d 35, 37 (Mo.App.1986). "[M]ultiple convictions are permissible if the defendant has in law and in fact com-

mitted separate crimes." *State v. Tread-way* at 651. Thus, the fact that defendant took five photographs of child pornography at the same location and within a relatively short period of time does not necessarily prevent prosecution, conviction and sentencing for five separate offenses.

Defendant does not tell us why the five counts did not represent separate offenses under the statute, § 573.025, rather than one single offense or course of conduct, § 556.041(4). The state cites two cases in its brief in support of its position that defendant attempted to violate the statute five separate times. Defendant's reply brief merely distinguishes those cases on their facts: *State v. Lulkowski,* 721 S.W.2d 35 (Mo.App.1986), because it concerned two counts of sodomy, and *State v. Mudd,* 703 S.W.2d 63 (Mo.App.1985), because it concerned two counts of promoting prostitution. Defendant then simply asserts that in this case there were no separate and distinct facts warranting multiple charges.

Moreover, defendant does not explain what the elements of the single offense are, nor does he allege why his conduct constitutes only that single offense. In failing to do so, he also fails to tell both the state and us what rule or principle to use to determine whether improper multiple convictions have been sought and, in turn, whether improper multiple sentences have been imposed. Is it the *Blockburger* test applied to a single statute, *see, e.g., State v. Lulkowski, supra,* 721 S.W.2d at 37; *Parker v. State,* 608 S.W.2d 543, 546–547 (Mo. App.1980); *State v. Williams,* 542 S.W.2d 3, 5–6 (Mo.App.1976); or is it the "unit of prosecution" test, when only one statute is in issue? *See, e.g., Horsey v. State,* 747 S.W.2d 748, 750–754 (Mo.App.1988); *see also, United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915).

▪ We may not make defendant's argument for him. We must remain impartial and not become a witting or unwitting adversary of the state, fashioning an argument for defendant and then searching the record and the law in support of that argument. Defendant neither develops an argument nor cites any relevant cases to support this issue raised in his Point. This issue, therefore, is deemed abandoned. Rule 30.06(d), (e); *e.g., State v. Sanders, supra,* 619 S.W.2d at 349.

### *Facts: Child Abuse, Count VII*

In June, 1986, defendant's fourteen year old daughter moved into his home to live with him. Shortly thereafter, defendant took her to Knaeble's house to have her photographed. Defendant remained in Knaeble's living room, and Knaeble led the daughter to a back room. During the next twenty minutes, Knaeble took sixty or more photographs of her, posing her in costumes he provided, one of which was only a g-string bikini with no top. Defendant was in and out of the room during the photography session, but his daughter could not remember whether he was in the room while she was being photographed in the g-string bikini.

On the way home from the photography session, defendant told his daughter, "I got the brains and you got the legs, let's make a lot of money." Then, when she told him she "took off [her] shirt" for the photographs, he replied, "[t]hat's all right."

Later, defendant admitted to the police that he knew Knaeble was a producer of child pornography and not a legitimate photographer. And, he also admitted he had seen the photographs and they "somewhat stimulated him."

### *Submissibility: Child Abuse*

A person commits the crime of abuse of a child, if he ...

(1) ...

(2) Photographs or films a child less than seventeen years old engaging in a prohibited sexual act ... or who causes or knowingly permits a child to engage in a prohibited sexual act or in the simulation of such an act for the purpose of photographing or filming the act.

§ 568.060.1(2)[4]

"Prohibited sexual act", "as used in this section" means:

... nudity, if such nudity is to be depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction.

§ 568.060.2

Section 568.060, however, does not define "nudity". Section § 573.010, within the chapter titled "Pornography and Related Offenses", does. This statute defines "nudity" as "the showing of post-pubertal human genitals or pubic area, with less than a fully opaque covering". § 573.010(7). Defendant uses this definition to argue that the state did not prove defendant's daughter was "nude"; the state, defendant argues, only proved she was photographed without her "shirt" and did not prove she was "completely unclothed during the photography session."

Defendant does not explain why he chose the definition of "nudity" in Chapter 573. His choice is not reasonable. "Nudity" is defined for Chapter 573 and is limited to the obscenity offenses defined in that Chapter. § 573.010. Moreover, an essential element of abuse of a child is that the victim be less than seventeen years old. § 568.060.1(2). Limiting "nudity" in child abuse cases to a display of "post-pubertal genitals or pubic area" does not protect a child under seventeen who has not reached puberty and, thus, destroys most of the child protection for which § 568.060 was enacted. *See, State v. Helgoth*, 691 S.W.2d 281 (Mo. banc 1985). Furthermore, to read "nudity" as requiring proof that the child was "completely unclothed", as defendant also argues, likewise destroys most of the statute's protection. Under that definition, a child wearing a shirt but with no cover over the genital or pubic area would not be "nude."

 To define "nudity", we look to the child protection purpose of the statute to give that word an appropriate meaning. In common parlance "nude" and "naked" are functional equivalents, *Webster's Third*

*New Int'l. Dictionary*, (1966), and "naked" may be defined as "inadequately or partially clothed esp. so as to be socially unacceptable." *Id.* To us, this definition fits comfortably within the purpose of the statute, and, thus, although not necessarily the complete statutory definition, it is a proper and acceptable definition. Defendant's daughter, therefore, was "nude" in the photographs taken of her.

### Section 568.060, Child Abuse: Constitutionality

Defendant contends this statute is too vague and overbroad. Ignoring defendant's failure to preserve this issue for review, we find this point meritless and specifically rejected by our Supreme Court in *State v. Helgoth*, 691 S.W.2d 281 (Mo. banc 1985).

### Uniform Mandatory Disposition of Detainers Law, § 217.45

 Prior to trial, defendant filed a motion to dismiss under our Uniform Mandatory Disposition of Detainers Law (Law), § 217.450. Defendant contended he was not tried within the 180 days limit imposed by the Law, after a detainer had been properly filed and processed.

At the hearing on the motion, defendant testified that he knew a detainer was "placed on [him]" on December 29, 1988 because he saw it on a warrant for his arrest, while he was at the Farmington Correctional Center. However, he testified, he was not told a detainer existed until February 7, 1989. On February 17, 1989, he filed in the court a request for immediate disposition of this case.

The trial court, however, was not required to credit defendant's testimony. Moreover, the record simply shows a warrant and commitment were issued on December 29, 1988 and that documents were sent to "Fugitive St. Louis County." There is no detainer nor a warrant with detainer in the record. Thus, the record does not show a detainer was lodged or filed.

Furthermore, the case was originally set for trial on June 19, 1989. The case was

---

4. The age limitation was raised to eighteen in 1990. H.B. 1370, Mo.Law 1990, at 1124.

continued by "consent of the parties to August 14, 1989", and the trial began on August 15, 1989. "[A]ny delay of a prisoner's trial which results from his affirmative action or agreement is not to be included in the period of limitation." *State v. Smith*, 686 S.W.2d 543, 547 (Mo.App.1985). Defendant has not demonstrated to us that his consent to a continuance was not an "affirmative agreement" to a continuance. Thus, the period from June 19, 1989 to August 14, 1989 must be excluded from the 180 day period. *Id. State v. Galvan*, 795 S.W.2d 113 (Mo.App.1990). Accordingly, the court did not lose jurisdiction to try defendant.

### Juror Bias

During trial, out of the presence of the jury, the bailiff reported to the court and counsel that two or three jurors told him "they felt uncomfortable because [defendant] was staring so intently at them. And they were very conscious of it." Defense counsel made a request to voir dire the entire jury, "individually", to determine whether they had "formed an opinion so early in the case" and had "pre-judged" the merits. The court denied the request. Although defense counsel did not precisely move for a mistrial, both the state and defendant's appellate counsel read the record as if a mistrial were requested and so shall we.

Defendant now argues the jurors' statements were a prima facie showing that they had decided the case against defendant prior to the close of all the evidence and, therefore, the denial of the request for voir dire to prove that fact was prejudicial error. We disagree.

Again, defendant's argument consists of a few conclusory statements and the citation of *State v. Hopkins*, 687 S.W.2d 188 (Mo. banc 1985), in which the Court reversed a conviction because defense counsel was forced to use a peremptory strike to remove a juror who should have been discharged for cause. We fail to see the relevance of *Hopkins*.

■ A mistrial is a drastic remedy and should only be granted for extraordinary circumstances. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985). The decision to grant a mistrial is within the discretion of the trial court, and "[t]he trial court is in a better position to determine whether an alleged incident of [juror] misconduct prejudiced the defendant." *State v. Mitchell*, 651 S.W.2d 637, 639 (Mo.App.1983); *State v. Cantrell*, 775 S.W.2d 319, 323 (Mo. App.1989).

■ Neither party has cited nor has our research disclosed a Missouri case in which a similar issue arose. To us, it was not unreasonable for the trial court to have interpreted the jurors' remarks to be, simply, "natural human responses to an uncomfortable situation," showing no prejudgment. *State v. Butzin*, 404 N.W.2d 819, 828 (Minn.App.1987) (during trial, two jurors said the defendant "was staring at them and that this 'gave them the creeps' ".)

### Rule 29.15 Motion

Defendant contends his trial counsel was ineffective because counsel (1) degraded him by derogatory remarks about his character and (2) failed to raise the defense of diminished capacity. Defendant raised these issues and others before the motion court, and, after a hearing, that court denied defendant's motion, with supporting Findings of Fact and Conclusions of Law on these issues. The Findings and Conclusions are not clearly erroneous. Rule 29.-15(j).

### Derogatory Remarks

At the time of trial, defendant's trial counsel had been practicing law in Missouri for about five years, four and one-half of which were as an assistant public defender. He had tried to conclusion "[b]etween 50 and 60, jury and felony trials."

Defendant likewise was not a naive neophyte unfamiliar with the criminal process. In 1982, he pleaded guilty to the felony of "Sexual Abuse First Degree", and, in 1987, he pleaded guilty to the felony of "Sexual Abuse First Degree."

Coupled with the defendant's record was the fact that defendant's daughter would

testify against him on the abuse count and the fact that the police officer would testify on the pornography counts about defendant's conduct toward child pornography and his possession of it, with photographic exhibits to support the officer's testimony. With this background, defendant's counsel met with defendant for three consecutive days immediately prior to trial to discuss trial strategy and tactics. The two of them decided that defendant would not testify because of his prior convictions and that the defense would be entrapment.

Also counsel decided that defendant's character should not be the determinative issue but defendant's conduct should be. Thus, at the motion hearing counsel said:

> Well, the idea was that this man is on trial for his actions, ... not what he is; and so there was no really getting around the fact that he was a pedophile, so I wanted to disassociate myself from his character and put before the jury what I thought were the real issues ... that being his actions, his conduct, and whether or not his conduct had constituted a criminal offense. I didn't want the jury to convict him on his character, so I suggested ... to [the jury] that ... he's not a wonderful man; but then again he may not be guilty.... That was the thrust of the [closing] argument.

Implementing this strategy, trial counsel elicited from the police officer, on cross-examination, that defendant was "a pathetic guy". He also asked the officer, "So as sick or as perverse or as creepy as this man may be, that doesn't mean that there's not some merit in his spirit?" The court sustained the prosecutor's objection to this question. Then, in closing argument, counsel at various times characterized defendant as a "lowlife", "creep", "pervert" and a "poor excuse for a human being." Defendant contends these remarks show a dereliction of counsel's duty.

To state the obvious, merely labeling a defense as "trial strategy" or "trial tactics" does not protect the trial counsel from being found ineffective. However, "[c]ounsel is not deemed ineffective simply because the result of a chosen strategy is disappointing. The [motion] judge is in the best position to evaluate the contentions of the parties." *Rodden v. State*, 795 S.W.2d 393, 397 (Mo. banc 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991). Of equal importance, "[t]he failure of a strategy knowingly and voluntarily pursued by [movant] does not entitle him to another try under the guise of ineffective assistance of counsel." *State v. Thomas*, 625 S.W.2d 115, 124 (Mo.1981). Thus, trial counsel was not ineffective when, in pursuing a course of reverse psychology, he characterized his client as a "jerk" and a "fool". *State v. Hamilton*, 791 S.W.2d 789, 797 (Mo.App.1990).

Here, defendant was described by the police officer to be what he was: an admitted pedophile. Defendant had two prior convictions for sexual abuse. His predilection for child pornography was amply documented in the record. Under these circumstances, we, like the motion court, do not find counsel's choice of defense and his method of implementing that defense so unreasonable that it constitutes ineffective assistance of counsel.

### Diminished Capacity

Defendant contends his trial counsel was ineffective because he failed to present a defense of diminished capacity based on the "mental disease, or defect" of pedophilia. We disagree.

At the motion hearing, counsel testified that he had decided not to pursue a defense based upon mental irresponsibility because defendant had been examined by a psychiatrist who diagnosed defendant as a pedophile and stated in his report "[t]hat (pedophilia) was not one of the classifications under which [defendant] could be deemed not responsible for his acts." Moreover, defendant did not appear irrational to counsel and "[n]othing was brought to [his] attention" to cause him to conclude another psychiatric exam was necessary.

Furthermore, the defense of diminished capacity must be based upon the existence of a "mental disease or defect" as defined in § 552.010. *See e.g., State v. Gill*, 806 S.W.2d 48, 50 (Mo.App.1991); *State v. Fisher*, 773 S.W.2d 178, 181 (Mo. App.1989); *State v. Foerstel*, 674 S.W.2d 583, 592 (Mo.App.1984). And, as the psy-

chiatrist noted, pedophilia did not constitute a "mental disease or defect which would have made [defendant] unable to know or appreciate the nature and quality of his conduct or to conform his conduct to the requirements of the law." Thus, diminished capacity was not a viable defense.

Finally, defendant argues the motion court failed to make Findings of Fact and Conclusions of Law on several of his initial *pro se* claims and on several of his claims in his amended motion, and, defendant apparently argues, that the court should have granted relief on five of these claims. We have assumed all these claims have been properly perfected procedurally and have reviewed them on their merits in the context of the entire record. We find none has merit and also find that an opinion addressing each individually would have no precedential value. Rule 30.25(b).

Judgments affirmed.

GRIMM, P.J., and CRANDALL, J., concur.