STATE of Missouri, Respondent,

v.

James Paul MARSH, Appellant.

James Paul MARSH, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16963, 17527.

Missouri Court of Appeals,
Southern District,
Division Two.

March 12, 1992.

---

Emmett D. Queener, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

A jury found defendant guilty of sexual abuse in the first degree, § 566.100,[1] and he was sentenced to three years' imprisonment. Defendant appeals, and that appeal is No. 16963. After the trial, defendant filed a motion for relief under Rule 29.15, and the trial court denied the motion. Defendant appeals from that ruling, and that appeal is No. 17527. The appeals are consolidated and will be dealt with separately.

### No. 16963

The information, in addition to its formal portions, charged that the defendant, on March 21, 1989, in Greene County, "subjected Tiffany Page, a person less than 12 years, to sexual contact."

" 'Sexual contact' means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3).

Defendant's first point is that the evidence is insufficient to support the ver-

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

dict, and the trial court erred in ruling otherwise, "because the only proof the state presented consisted of the alleged victim's uncorroborated testimony which was of such a contradictory nature and in such conflict with the physical facts, surrounding circumstances, and experience as to be unconvincing."

In reviewing defendant's challenge to the sufficiency of the evidence, this court considers the evidence and all reasonable inferences arising therefrom in the light most favorable to the verdict, and disregards those portions contrary to a finding of guilt. This court does not weigh the evidence nor determine the credibility of the witnesses. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Whittle*, 813 S.W.2d 336, 337 (Mo.App. 1991).

The state's witnesses were the 9-year-old victim, Tiffany Page, Dorothy Temple, who is Tiffany's aunt, and Detective Truly Applegate of the Springfield Police Department.

Dorothy Temple testified that on March 21, 1989, she and Tiffany went to defendant's house. Defendant was sitting in his chair by the door in the living room. Dorothy left the room to look at a new skirt which defendant's wife, Debbie Marsh, had bought. She talked to Debbie about it. When they first arrived at the house, Tiffany sat on the couch, but Dorothy later saw Tiffany sitting on defendant's lap. When Dorothy "came back in," Tiffany was off his lap and sitting on the couch. Tiffany "cleared her throat" and nodded toward the door. "Tiffany wanted me to take her home, which I did." When they got home, which was nearby, Tiffany started to cry and told Dorothy what happened. It was not too long before Tiffany's mother got there.

Tiffany Page testified she had a new doll which she showed to defendant while she was standing by his chair. Tiffany gave the following testimony:

Q. (By Prosecutor Cynthia Rushefsky) Okay. Now, what happened if anything when you were over by Mr. Marsh's chair?

A. He pulled me over and sat me on his lap and then he started touching me.

Q. Where did he touch you?

A. On the top part of my chest, right here, and on my front part, private part.

Q. Your front private part, the part between your legs?

A. Uh-huh.

Q. How did he do that? What did he do?

A. Well, he just put his hand there.

Q. Were your clothes on or off?

A. On.

Q. When he touched you, was it on top of your clothes or underneath your clothes?

A. On top.

Q. Did he say anything to you when he touched you down there?

A. He asked me what that was between my legs.

Q. Did you say anything to him?

A. (Indicating.)

Q. What did you do when he touched you like that?

A. I tried to get up, and he pulled me back.

Q. Did he say anything else to you while you were standing there, then?

A. He said that—not to tell anyone.

Q. All right. Did he do anything else while he was there with you?

A. He tried to stick his tongue in my mouth.

Q. Okay. Did you say anything to him, then?

A. Huh-uh.

Q. Did you say anything to your Aunt Dorothy?

A. Uh-huh. I told her. I put my doll up against my face and I told her, "Let's go."

Q. Okay. Did—when did you tell her, though, what happened?

A. As soon as we got over to her house.

Q. All right. Why didn't you tell her when you were over at Mr. Marsh's house?

A. Because I didn't want him to hear me.

Q. All right. When he said this to you, how loud was he saying it? Was he saying it loud enough for everybody to hear?

A. No, he whispered it.

Q. Now, when you got back and you told your Aunt Dorothy, did you tell anybody else about it?

A. As my mom came to pick me up, I told her.

Detective Applegate testified that he interviewed the defendant on March 28, 1989, and gave him the Miranda warnings. During the interview, defendant became quite agitated, "fell on the floor, and feigned crying quite loudly." Defendant told the detective about his contact with Tiffany on March 21. Defendant said that he did not intend to scare or hurt Tiffany when he touched her, and he wanted the detective to put in his report that defendant was sorry he touched Tiffany. Defendant said he was glad to get it off his chest, that he had not intended to hurt Tiffany, that the Lord had cured him of his alcoholism and he felt the Lord had the power to cure him of this problem also. Defendant said he thought that counseling would help him "since this was his first time."

In *State v. Evans,* 802 S.W.2d 507 (Mo. banc 1991), an appeal from a conviction for raping a 9–year–old girl, the court said, at 514:

Through direct and cross-examination, she maintained her story without varia-

tion. This was sufficient to submit the issue, for the uncorroborated testimony of a victim will sustain a conviction of rape unless such testimony is so unconvincing and contradictory as to "cloud the mind of the court with doubts." *State v. Hamrick,* 714 S.W.2d 566, 567 (Mo.App.1986). No such contradictions appear. Though the victim was nine years of age, that in itself does not render the evidence inadmissible or insufficient.

Tiffany's testimony, itself sufficient, was supported by the admissions of defendant. The evidence was sufficient to support the verdict. Defendant's first point has no merit.

■ Defendant's second point is that the trial court unduly restricted his cross-examination by sustaining the state's objection to his cross-examination of Dorothy Temple regarding her belief of Tiffany's allegations against defendant and by rejecting defendant's offer of proof that she did not believe Tiffany's allegations against defendant and that she did not call the police after Tiffany reported the incident.

■ A sufficient answer to this point is that Dorothy Temple testified on cross-examination that she did not call the police and that she did not believe Tiffany. Moreover, the determination of the credibility of a witness is within the sole province of the jury. *State v. Williams,* 652 S.W.2d 102, 111 (Mo. banc 1983). "Clearly, one witness may not pass upon the credibility of another witness." *Henson v. Kansas City,* 277 Mo. 443, 210 S.W. 13, 17[11] (1919). See also *Cooley v. St. Louis Public Service Co.,* 236 S.W.2d 31, 35[2] (Mo.App.1951). The rule is the same in a criminal case. 23 C.J.S. Criminal Law § 1052b. Defendant's second point has no merit.

The judgment is affirmed.

### No. 17527

■ Movant asserts that he was entitled to relief on his Rule 29.15 motion and that

the trial court clearly erred in denying the motion after an evidentiary hearing, in that movant was denied his constitutional right to effective assistance of counsel because "trial counsel made inappropriate references to movant's weight and appearance and referred to movant as a 'pervert' and 'child molester' in the presence of the jury, thereby prejudicing the jury against movant."

Appellate review of the trial court's action on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court were clearly erroneous. Rule 29.15(j).

Movant's criticism of his trial counsel refers to the following comments contained in her closing argument to the jury:

(Defense Counsel Elizabeth Bock): During voir dire I talked to you about Mr. Marsh, and I asked you to look at him. And I asked you to tell me whether or not you thought he looked like a child molester. And there are those of you on the jury that I know chuckled during his testimony yesterday and you know that he doesn't have any teeth, and he's kind of big and he's kind of fat. And you may be repulsed by him, but that isn't what this case is about.

As children, we judge people on appearances. We look at the big fat man in the store, and we may laugh at him. We may point him out, we may not want to be near him, but as adults we are mature. And we learn, as adults, we learn as a part of maturity, that we don't judge people on how they look.

And no matter how you feel about Mr. Marsh, you must decide the case on the evidence because this is one of the most serious charges you can charge someone with and that you're telling the person that you're a child molester. You're a pervert, and we're going to brand you for the rest of your life. This is a felony charge. It is very, very serious.

Ladies and Gentlemen, if you look at the facts of this case and the evidence in this case and set aside the emotional feelings that have no part of the administration of justice in our society, you look at the evidence in this case and use your common sense.

I'm confident that when you look at the evidence, you'll return the only verdict possible, and that is not guilty.

At the hearing on the motion, the state called attorney Bock, who testified that the content of her final argument was a matter of trial strategy. She said that movant's appearance had caused people to snicker and laugh and "I didn't want the jury to lose the seriousness of the case, ... and I also argued in closing that the jury should not judge him by his appearance in that he was a big or a fat man, and that some of them had snickered when he was on the stand about that, and that was not what they were there for, they were there to decide the evidence in the case and not his appearance and that we should not judge a person on appearances."

The findings of the trial court included the following: Movant's trial counsel did not make inappropriate references to movant's weight and appearance in the presence of the jury during trial; any reference made by trial counsel to movant's weight and appearance were not derogatory but were trial strategy intended to keep the jury from considering those factors in their deliberations; trial counsel did not refer to Marsh as a pervert and a child molester in the presence of the jury.

"Trial strategy is not an adequate basis for an attack on the competency of counsel." *Covington v. State*, 600 S.W.2d 186, 189 (Mo.App.1980). To similar effect see *Grubbs v. State*, 760 S.W.2d 115, 118[1] (Mo. banc 1988). The attorney who represented movant at the jury trial did an excellent job, and she "is not to be faulted because movant's instant counsel might have employed a different technique." *Swearingin v. State*, 629 S.W.2d 560, 563 (Mo.App.1981). The trial court's findings are not clearly erroneous and, indeed, are fully supported by the record.

The judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.