**STATE of Missouri, Plaintiff–Respondent,**

v.

**Neldon H. NEAL, Defendant–Appellant.**

No. 23288.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 15, 2001.

Irene C. Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Linda Lemke, Assistant Attorney General, Jefferson City, for Respondent.

GARRISON, Judge.

Neldon H. Neal ("Defendant") was charged by amended information, as a prior and persistent offender, with robbery in the second degree, in violation of Section 569.030,[1] and property damage in the second degree, in violation of Section 569.120. A jury found Defendant guilty of robbery in the second degree, and he was sentenced to fifteen years imprisonment.

 As Defendant contests the sufficiency of the evidence supporting his conviction, appellate "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *Id.* Viewed in this light, the evidence most favorable to the verdict shows:

On November 2, 1997, seventy-year-old Bonnie Kimrey ("Kimrey") was working as a cashier at the Falcon Package and Convenience Store in Falcon, Missouri, which was owned by Gary Williams ("Williams"). Just before closing time, Defendant, who had been in the store two or three times previously when Kimrey was on duty, entered the store, banging the store's front door wide open. He walked over to the counter, slammed his hand on a glass plate on the counter top, shattering it, and said to Kimrey, "[Y]ou old son of a bitch, you won't call the cops on anybody else." De-

fendant, who was pulling his hair, gritting his teeth, and "chattering," told Kimrey that he would "get [her] girls first," burn her house down, and have his "boys" get her. Kimrey did not know what Defendant meant by his "boys." Defendant also told Kimrey that he "worked for the cops and he shot at the cops and he dealt in dope and took dope." Kimrey was frightened and told Defendant that she had never called the police on him. Defendant said several times, "I won't be gone five minutes until you will call the cops," and each time he said that, Kimrey promised him she would not call the police.

Defendant walked over to the counter's opening, blocking Kimrey behind the counter, and standing less than five feet away from her, exposed himself, and told her that he "hurt people with that." Kimrey testified at trial that at that moment she was in fear for her life. At about that time, a truck drove up to the store, and Defendant demanded that Kimrey get him a fifth of blackberry brandy from behind the counter and he walked to the back of the store to get a twelve-pack of beer from the cooler. He walked back to the front of the store with the beer, and Kimrey gave him two pints of blackberry brandy because the store did not carry fifths. As she handed him the brandy, a male customer walked into the store. Defendant immediately began acting friendly toward Kimrey, and as Defendant walked out of the store, he said, "[T]ell [Williams] that [I will] take care of it later," and that he was "good for it." He also told Kimrey, "[H]oney, I want you to pray for my mother, she's in bad shape."

After Defendant left, Kimrey asked the male customer to stay with her for a few minutes while she closed the store, and then Kimrey went home. Kimrey, who was extremely distraught, told her daughter and son-in-law what had happened, but asked them not to call the police. Her son-in-law called Williams that night to tell

1. All statutory references are to RSMo 1994, unless otherwise indicated.

him about the incident. Williams tried to talk to Kimrey, but she was crying too hard to speak. The next morning, Williams reported the incident to the police. The police interviewed Kimrey, but she refused to give a written statement because of Defendant's threats. Kimrey said that she would not have let Defendant take the alcohol if he had not threatened her.

At trial, Defendant did not take the stand, but called two witnesses. One of the witnesses testified that the glass counter top had a crack in it prior to November 2, 1997, and the other testified that he had purchased items from the store on credit, and that one or two days after the incident, he had paid back part of the cost of the alcohol Defendant had taken.

Defendant's motion for a directed verdict at the close of the State's case was overruled. Likewise, Defendant's motion for judgment of acquittal at the close of the evidence was also overruled. The jury found Defendant guilty of robbery in the second degree, and the trial court sentenced him to a term of fifteen years imprisonment. Defendant appeals.

In his sole point on appeal, Defendant argues that the trial court erred in overruling his motion for judgment of acquittal and in sentencing him in that there was "not evidence from which a reasonable juror could find, beyond a reasonable doubt, that [Defendant] threatened the immediate use of physical force."

Section 569.030.1 provides that "[a] person commits the crime of robbery in the second degree when he forcibly steals property." The term "forcibly steals" is defined under Section 569.010(1) as follows:

> a person "forcibly steals", and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

■ The threat of physical harm need not be explicit; it can be implied by words, physical behavior or both. *State v. Rounds*, 796 S.W.2d 84, 86 (Mo.App. E.D. 1990); *State v. Duggar*, 710 S.W.2d 921, 922 (Mo.App. S.D.1986). *See also State v. Clark*, 790 S.W.2d 495, 497 (Mo.App. E.D. 1990), in which the court held that giving an employee a note stating "This is a holdup" satisfied the requirement of "forcibly steals," as the message was at least a threat to use immediate physical force for the purpose of compelling the employee to deliver up the money. The force necessary to constitute robbery may be "constructive as well as actual, and may consist [of] the intimidation of the victim, or putting him in fear." *Rounds*, 796 S.W.2d at 86.

■ In the instant case, the jury could have found, beyond a reasonable doubt, that Defendant threatened the immediate use of physical force upon Kimrey for the purpose of preventing resistance to the taking of the beer and blackberry brandy. From the evidence presented, the jury could have found that Defendant violently banged open the front door; smashed the glass on the counter top directly in front of Kimrey; made her promise several times not to call the police; threatened violence against her; trapped her behind the counter; exposed himself in a threatening way; demanded alcohol; and left the store with it. Accordingly, the jury could have reasonably concluded that Defendant's actions communicated to Kimrey that he would immediately physically or sexually assault her if she did not comply with his demands or tried to call the police.

Defendant relies on two cases, *State v. Tivis,* 884 S.W.2d 28 (Mo.App. W.D.1994), and *State v. Carter,* 967 S.W.2d 308 (Mo. App. E.D.1998), to support his contention that the evidence was insufficient to sustain his conviction. However, both cases are distinguishable from the instant case in that the defendants in both *Tivis* and *Carter,* who had their convictions for second-degree robbery reversed, grabbed the victim's purse and ran away, using no other force during the crime. *See Tivis,* 884 S.W.2d at 30, ("[The defendant] did not express any threat against [the victim]," and "[the victim] specifically testified that there was no struggle over the purse"); *Carter,* 967 S.W.2d at 309, ("The evidence presented at trial showed that [the][d]efendant never threatened or hit [the][v]ictim and [the][d]efendant did not display a weapon"). In contrast, in this case, the evidence showed that Defendant threatened Kimrey, smashed the glass on the counter in front of her, made her promise not to call the police, blocked her exit from the counter, exposed himself and commented that he "hurt people with that," and then demanded alcohol and left the store. Consequently, Defendant's reliance on *Tivis* and *Carter* is misplaced.

The trial court did not err in overruling Defendant's motion for judgment of acquittal in that there was sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that Defendant threatened the immediate use of physical force. Defendant's point is therefore denied.

The judgment of the trial court is affirmed.

BARNEY, C.J., and MONTGOMERY, J., concur.