Neldon Harrison NEAL, Movant,

v.

**STATE of Missouri, Respondent.**

No. 24871.

Missouri Court of Appeals,
Southern District,
Division One.

March 25, 2003.

Charles M. Rogers, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Anne E. Edgington, Assistant Attorney General, Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Neldon Neal ("Movant") appeals from a judgment of the Circuit Court of Camden County denying his post-conviction motion brought pursuant to Rule 29.15 after a hearing.[1] In his motion, Movant sought to vacate his conviction for robbery in the second degree, § 569.030, and his attendant sentence of 15 years imprisonment as a persistent offender. The conviction, a result of trial by jury, was affirmed by this Court on direct appeal in *State v. Neal,* 36 S.W.3d 814 (Mo.App.2001).

Movant raises four points of motion court error based on its findings and conclusion that Movant's defense counsel in the underlying trial was not ineffective in his representation of Movant. In particular, Movant maintains that his defense counsel was ineffective because he: (1) failed to request an instruction on the lesser included offense of misdemeanor stealing; (2) failed to object to Movant being tried in prison garb; (3) repeatedly made disparaging comments and elicited derogatory information about Movant during the trial; and (4) failed to object during closing arguments to the prosecutor's improper argument that one of Movant's two witnesses had been convicted of burglary without evidentiary support for this assertion.

The underlying facts show that on November 2, 1997, seventy-year-old Bonnie Kimrey was working as a cashier at the Falcon Package and Convenience Store in Falcon, Missouri. Just before closing time Movant entered the store, "banging the store's front door wide open." *Neal,* 36 S.W.3d at 815. Movant then walked over to the counter, slammed his hand on a glass counter top, shattering it, and said to Kimrey, "You old son of a bitch, you won't call the cops on anybody else." *Id.* "[Movant], who was pulling his hair, gritting his teeth and 'chattering,' told Kimrey that he would 'get her girls first,' burn her house down, and have his 'boys' get her." *Id.* Movant also told Kimrey that he " 'worked for the cops and he shot at the cops and he dealt in dope and took dope.' " *Id.* Kimrey testified that she was frightened and told Movant that she had never called the police on him. "[Movant] said several times, 'I won't be gone five minutes until you will call the cops,' and each time he said that Kimrey promised him she would not call the police." *Id.* Movant then walked over to the counter's opening, "blocking Kimrey behind the counter, and standing less than five feet away from her, exposed himself, and told her that he 'hurt people with that.' " *Neal,* 36 S.W.3d at 815. "At about that time, a truck drove up to the store, and [Movant] demanded that Kimrey get him a fifth of blackberry brandy from behind the counter and he walked to the back of the store to get a twelve-pack of beer from the cooler." *Id.* Kimrey gave him two pints of blackberry brandy because the store didn't carry fifths. As she handed him the brandy, a male customer entered the store. "[Movant] immediately began acting friendly toward Kimrey, and

1. Rule references are to Missouri Court Rules (2001) unless otherwise indicated. All statutory references are to RSMo 1994, unless otherwise stated.

as [Movant] walked out of the store, he said, '[t]ell [the owner] that I will take care of it later,' and that he was 'good for it.' " *Id.* "He also told Kimrey, '[h]oney, I want you to pray for my mother, she's in bad shape.' " *Id.*

After Movant departed, Kimrey asked the male customer to stay with her for a few minutes while she closed the store. Kimrey, extremely distraught, informed her daughter and son-in-law what had happened, but asked them not to inform the police about the incident with Movant. *Id.* Kimrey's son-in-law informed the store's owner of the incident and, in turn, he informed the police of Movant's actions. *Neal,* 36 S.W.3d at 815–16. The police interviewed Kimrey but "she refused to give a written statement because of [Movant's] threats." *Id.* at 816. She said that "she would not have let [Movant] take the alcohol if he had not threatened her." *Id.*

At trial, Movant did not take the stand but called two witnesses. One testified the glass counter top had a crack in it prior to November 2, 1997. The other, Richard Allen Jones, testified that he had purchased items from the store on credit and that one or two days after the incident, he had paid back part of the cost of the alcohol Movant had taken. *Id.* at 816. Kimrey and the store owner both testified that they never extended credit to anyone.

Movant was convicted of robbery in the second degree. As previously set out, this Court affirmed his conviction, finding that there was sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that [Movant] had "threatened the immediate use of physical force." [2] *Id.* at 817.[3]

■ "Review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous." *Kluck v. State,* 30 S.W.3d 872, 875 (Mo. App.2000); *Leisure v. State,* 828 S.W.2d 872, 873–74 (Mo. banc 1992), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). "The findings and conclusions of the motion court are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Kluck,* 30 S.W.3d at 875.

"To prevail on a claim of ineffective assistance of counsel, a movant must show that the counsel failed to exercise the customary skill and diligence of a reasonably

---

2. Section 569.030.1 provides that "[a] person commits the crime of robbery in the second degree when he forcibly steals property." The term "forcibly steals" is defined under section 569.010(1) as follows:

[A] person 'forcibly steals,' and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

3. This Court's opinion set out that the "threat of physical harm need not be explicit; it can be implied by words, physical behavior or both." *Neal,* 36 S.W.3d at 816. Furthermore, the opinion noted that the "force necessary to constitute robbery may be 'constructive as well as actual, and may consist of the intimidation of the victim, or putting him in fear.' " *Id.* (quoting *State v. Rounds,* 796 S.W.2d 84, 86 (Mo.App.1990)). The opinion observed that "in this case, the evidence showed that [Movant] threatened Kimrey, smashed the glass on the counter in front of her, made her promise not to call the police, blocked her exit from the counter, exposed himself and commented that he 'hurt people with that,' and then demanded alcohol and left the store." *Id.* at 817.

competent attorney under similar circumstances and that he was thereby prejudiced." *Id.; Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). "Prejudice is shown where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698); *see State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

■■■■■ A movant bears the burden of proving grounds for relief asserted in his post-conviction motion by a preponderance of the evidence. *State v. Nunley,* 923 S.W.2d 911, 922 (Mo. banc 1996); *see* Rule 29.15(i). "A defendant is not entitled to a perfect trial or to clairvoyant trial counsel." *Kluck,* 30 S.W.3d at 876. "There is a strong presumption that trial counsel was competent." *Floyd v. State,* 77 S.W.3d 98, 101 (Mo.App.2002).

Furthermore, "actions of counsel that constitute sound trial strategy are not grounds for ineffective assistance claims." *Kluck,* 30 S.W.3d at 878; *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied,* 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999); *Nunley,* 923 S.W.2d at 922–23.

Movant's four points relied on are disposed of on the basis that Movant's defense counsel was exercising reasonable trial strategy in each instant complained of by Movant. We review these points seriatim.

■■■■ In our review of Movant's first point, he maintains that his trial counsel was ineffective for not having requested an instructional submission for the offense of misdemeanor stealing, which Movant maintains is a lesser included offense of robbery in the second degree. He argues that his trial counsel offered numerous other instructions on lesser offenses, both felonies and misdemeanors, but failed to offer a specific one on misdemeanor stealing.[4] He points to the fact that after less than three hours of deliberation the jury sent the trial judge a question concerning the possibility of a reduced charge. Movant maintains that the jury's action established that there was a reasonable probability that had the jury been given an instruction on misdemeanor stealing the outcome of the proceeding would have been different and that Movant would have been convicted of only the misdemeanor offense.

We observe that the motion court found that defense counsel's decision not to ask for a lesser-included offense submission was in keeping with defense counsel's trial strategy of presenting facts to the jury supporting the proposition that defendant was guilty of no crime at all. Generally, such a determination that defense counsel employed a particular course of action as reasonable trial strategy will not result in a finding of ineffective assistance of counsel. *See State v. Theus,* 967 S.W.2d 234, 242 (Mo.App.1998).

We observe that the record of the instruction conference reveals defense counsel requested the trial court give four lesser, but not necessarily lesser included, instructions, which hypothesized crimes carrying a *lesser* range of punishment to

---

4. These submitted instructions, involving property damage in the first and second degree, stealing without consent by the physical taking of property from a person, and assault in the third degree were rejected by the trial court.

that of robbery in the second degree.[5] Based on what defense counsel said to the trial court, it is apparent that Movant had influenced the decision to seek the submissions on lesser offenses. Defense counsel stated to the trial court that "the *defendant* has requested those lesser felonies and misdemeanors be given and asking the court to give those instructions." (emphasis added). Defense counsel, nevertheless, did not tender an instruction hypothesizing the class A misdemeanor of stealing without consent. § 570.030.3(3)(k), RSMo Cum.Supp.1997; MAI CR3d 324.02.1 (10/1/98)(in this instance, applicable to crimes committed after August 28, 1997). "In this regard, there is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Kluck*, 30 S.W.3d at 878.

▇ "A decision not to request a lesser-offense instruction is made frequently by defense counsel." *State v. Olson*, 636 S.W.2d 318, 322 (Mo. banc 1982), *overruled on other grounds by State v. Santillan*, 948 S.W.2d 574, 576 (Mo. banc 1997). "It is a tactical decision usually based on the belief—often a reasonable one—that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted." *Id.* "Likewise, the prosecutor will oftentimes request the lesser-offense instruction if he doubts the strength of his case on the higher offense and desires a conviction of something rather than a possible total acquittal." *Id.*

Given these circumstances we conclude that the order of the motion court denying relief as to this point was not clearly erroneous. Point denied.

▇ In his second point of motion court error, Movant maintains his trial counsel was ineffective because he failed to object to Movant being tried while wearing his prison clothing and that this constituted ineffective assistance of counsel. We recognize that a prisoner can't be forced to appear at trial wearing identifiable prison clothing. *State v. Harris*, 868 S.W.2d 203, 208 (Mo.App.1994); *State v. Green*, 674 S.W.2d 615, 622 (Mo.App.1984); *Estelle v. Williams*, 425 U.S. 501, 504–05, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 130–31 (1976). To do so "disparages the presumption of innocence and impairs a fair trial." *Green*, 674 S.W.2d at 622. Absent such compulsion, however, no constitutional violation results. *Id.*

Here, the record reveals that Movant had been scheduled for trial earlier in the year and at that time Movant had decided, after consulting his trial counsel, that he would be tried while wearing his jail clothes. During the motion hearing Movant testified that he had changed his mind about wearing jail clothes. Movant was then asked the following question: "And did [trial counsel] know that you were going to have clothes there for trial?", whereupon he answered, "I don't know." When asked, "[b]ut when you got to court, did you tell him they won't let me change clothes?", he answered, "[y]es, I think I did tell him."

It is apparent that Movant equivocated somewhat as to whether he told trial counsel during the second discussion he did not want to wear the jail uniform. On this basis alone the motion court, as arbiter of credibility, did not have to believe Movant's testimony that he had informed his trial counsel that he wished to wear his

---

5. Robbery in the second degree, § 569.030, is a class B felony, which carries punishment of

a "term of years not less than five years and not to exceed fifteen years." § 558.011.

regular clothing at trial. *See Royal v. State*, 868 S.W.2d 552, 555 (Mo.App.1994); *Theus*, 967 S.W.2d at 242.

More compelling, however, were defense counsel's remarks made during closing arguments, where he argued to the jury that Movant had spent enough time in jail for the amount of property taken.[6] Given this declaration, it is not unreasonable to conclude that it was trial counsel's strategy to evoke some sort of sympathy from the jury by pointing out that Movant had been in jail for fifteen months awaiting trial. Movant's wearing of prison garb lent support to trial counsel's line of argument. *See State v. Carter*, 955 S.W.2d 548, 560 (Mo. banc 1997) (trial counsel addressed defendant's appearance in jail clothes during voir dire, explaining defendant was too poor to afford bail, was an attempt to evoke sympathy for his client). "Counsel is not ineffective because a trial strategy apparently failed." *Id.* Point denied.

■ Movant's third point is premised on his trial attorney being derelict in performing his duties because he made disparaging and derogatory remarks about Movant at various times during the course of the trial. The motion court found these remarks by the defense attorney were part of trial counsel's trial strategy to educate the jury about certain remarks that Movant had made to the chief prosecuting witness, Bonnie Kimrey, during the time of the incident.

We determine that the motion court did not err in finding that defense attorney's remarks constituted reasonable trial strategy in the face of potentially damaging remarks that were expected to be made by the State's chief witness in front of the jury. It is clear defense counsel's trial strategy in this instance was an attempt to "soften the blow" arising from Ms. Kimrey's revelations of Movant's vulgar display, remarks and threats. *See State v. Foster*, 838 S.W.2d 60, 69–70 (Mo.App. 1992); *see also State v. Hamilton*, 791 S.W.2d 789, 797 (Mo.App.1990) (trial counsel not ineffective when, in pursuing course of reverse psychology, he characterized his client as a "jerk" and a "fool."); *State v. Marsh*, 826 S.W.2d 846, 850 (Mo.App. 1992).[7] The trial court's finding is not clearly erroneous and is supported by the record. Point denied.

■ In his last point, Movant faults the motion court for not finding his defense counsel ineffective when he failed to object to the prosecutor's argument, in closing, that Movant's witness, Richard Jones, had been convicted of burglary when there was no evidence in the record supporting the prosecutor's assertions. This point has no merit.

Movant did not take the stand during his criminal trial. He presented two witnesses in his defense. Richard Allen Jones was one of them. He testified that he had purchased items from the convenience store on credit "several times." He

---

**6.** "We're talking about less than twenty-five dollars worth here, worth of junk, brandy and beer and a glass, throw it all together, you got twenty-five dollars. *You have a man in jail for fifteen months....*" (emphasis added).

**7.** In *Foster*, 838 S.W.2d 60, during closing arguments defense counsel described his client, an admitted pedophile who had been charged with attempting to promote child pornography and abuse of a child, as a "low life," "creep," etc. *Id.* at 69–70. In our

review, it was clear that defense counsel's strategy was to admit defendant's character, and focus instead upon whether defendant's *conduct* constituted a criminal offense. *Id.* The reviewing court then determined that given the circumstances of the case, defense counsel's choice of defense and his method of implementing that defense was not unreasonable and did not constitute ineffective assistance of counsel. *Id.* at 70.

also asserted that "my brother has and several people around in that area." In particular, he pointed out that "Bonnie [Kimrey] has extended credit to me."

On cross-examination, the prosecutor inquired of Jones whether he had been convicted of a "felony crime in the past." He answered, "I probably did because I believe I had shoplifted, wasn't that the one[?]."

Later, in closing arguments, the prosecutor remarked that "[w]ell, Alan Jones is a convicted felon for burglary, stealing, that's what Allen Jones is. Can you trust Allen Jones?" No objection was lodged by defense counsel.

The motion court determined that, "by stating that Mr. Jones was a convicted felon for burglary, stealing other than burglary and stealing, a reasonable inference can be made that the reference to the burglary conviction was a misstatement that was cleared up when the prosecutor followed with the word 'stealing.'" In either event, the motion court noted "[t]aking the prosecutor's entire argument as a whole, the court cannot find that [Movant's] defense was prejudiced by an isolated misstatement regarding Mr. Allen's [sic] criminal history." The motion court then observed that "[g]enerally, failure to object during closing argument is not error, but rather a function of trial strategy." We agree.

■ "'Objections during closing argument are considered a function of trial strategy.'" *Aaron v. State*, 81 S.W.3d 682, 696 (Mo.App.2002) (quoting *State v. Hall*, 982 S.W.2d at 689). "Trial counsel will be deemed ineffective for failing to object during closing argument only if the argument prejudiced the defendant and resulted in substantial deprivation of the defendant's right to a fair trial." *Id.* "'[T]he alleged improper argument must be considered in the context of the trial as a whole.'" *Id.* (quoting *Hall v. State*, 16 S.W.3d 582, 586 (Mo. banc 2000)).

It has been observed in similar cases that "[i]t is not always wise to make all possible objections." *Jones v. State*, 784 S.W.2d 789, 792 (Mo. banc 1990). Indeed, by objecting, the jury's attention may have been unduly focused on the fact that Jones had, in his own words, "probably" been convicted of a felony because he had shoplifted.

■ Here, defense counsel's failure to object was mere trial error, not rising to constitutional proportions and thus not cognizable in a post-conviction motion. *State v. Suarez*, 867 S.W.2d 583, 587 (Mo. App.1993). "Ineffective assistance of counsel is not to be determined by a 'post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances.'" *Id.* In the context of the entire trial, we do not see where a purported, isolated mistake by prosecutor regarding Movant's witness unduly prejudiced Movant's defense. *Hall*, 982 S.W.2d at 689. "'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Suarez*, 867 S.W.2d at 587 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "The defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Movant has failed to meet this test. Point denied.

The judgment is affirmed.

RAHMEYER, C.J., and GARRISON, J., concur.